AO 241
(Rev. 01/15)

FEE DUE

FILED
CLERK, U.S. DISTRICT COURT

JAN 1 9 2023  Page 2

CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| | |
|---|---|
| **United States District Court** CENTRAL DISTRICT | **District:** OF CALIFORNIA |
| Name (under which you were convicted): MIGUEL ANGEL SALAZAR **LACV23-0468-DSF-JPR** | Docket or Case No.: |
| Place of Confinement: CENTINELA STATE PRISON | Prisoner No.: AP-5667 |
| Petitioner (include the name under which you were convicted) MIGUEL ANGEL SALAZAR ᵛ· | Respondent (authorized person having custody of petitioner) SEAN MOORE, WARDEN |
| The Attorney General of the State of: ROB BONTA (SBN. 202668) | |

**PETITION**

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    SUPERIOR COURT - CENTRAL DISTRICT
    210 W. TEMPLE STREET
    LOS ANGELES, CALIFORNIA. 90012

    (b) Criminal docket or case number (if you know): #BA376429

2.  (a) Date of the judgment of conviction (if you know): 08/2013

    (b) Date of sentencing: 05/16/2013

3.  Length of sentence: _____

4.  In this case, were you convicted on more than one count or of more than one crime?  ☑ Yes   ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: FIRST DEGREE MURDER, CARJACKING, WITH SPECIAL CIRCUMSTANCES ALLEGATIONS. LIFE WITHOUT THE POSSIBILITY OF PAROLE.

    _____

    _____

6.  (a) What was your plea? (Check one)

    ☑ (1)   Not guilty        ☐ (3)   Nolo contendere (no contest)

    ☐ (2)   Guilty            ☐ (4)   Insanity plea

AO 241
(Rev. 01/15)

Page 3

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury   ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes   ☑ No

8. Did you appeal from the judgment of conviction?

☑ Yes   ☐ No

9. If you did appeal, answer the following:

(a) Name of court: COURT OF APPEAL

(b) Docket or case number (if you know): B248963

(c) Result: DENIED

(d) Date of result (if you know): 10/01/2014

(e) Citation to the case (if you know): N/A

(f) Grounds raised: 1.) INSUFFICIENT EVIDENCE
2.) INEFFECTIVE ASSISTANCE OF COUNSEL

(g) Did you seek further review by a higher state court?   ☑ Yes   ☐ No

If yes, answer the following:

(1) Name of court: CALIFORNIA SUPREME COURT

(2) Docket or case number (if you know): N/A

(3) Result: DENIED (EXHIBIT B)

(4) Date of result (if you know): N/A

AO 241
(Rev. 01/15)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result:  DENIED  (SEE, EXHIBIT B.)

(8) Date of result (if you know):  12/21/2022

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☑ Yes    ☐ No

(2) Second petition:    ☐ Yes    ☐ No

(3) Third petition:    ☐ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:**  THE PETITION ALLEGES REVERSAL OF MY FIRST-DEGREE MURDER CONVICTION IS REQUIRED UNDER ....

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(SEE, EXHIBIT A at p, 9)

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why:  EXHAUSTED.

_____

_____

_____

_____

_____

AO 241
(Rev. 01/15)

Page 7

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:

_____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    HABEAS CORPUS PETITION

Name and location of the court where the motion or petition was filed:    SUPERIOR COURT -
CENTRAL DISTRICT - LOS ANGELES, CA. 90012

Docket or case number (if you know):    BA376429

Date of the court's decision:    09/21/2020

Result (attach a copy of the court's opinion or order, if available):    DENIED, (SEE,
EXHIBIT A, ATTACHMENT E.)

_____

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:    N/A

Docket or case number (if you know):    _____

Date of the court's decision:    _____

Result (attach a copy of the court's opinion or order, if available):    _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

AO 241
(Rev. 01/15)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: N/A

**GROUND TWO:** INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S SPECIAL CIRCUMSTANCES FINDING.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(SEE, EXHIBIT A at p. 14.)

(b) If you did not exhaust your state remedies on Ground Two, explain why: EXHAUSTED

(c)     **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

    ☒ Yes    ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: HABEAS CORPUS PETITION

    Name and location of the court where the motion or petition was filed: COURT OF APPEAL, SECOND APPELLATE DISTRICT, DIVISION FOUR

    Docket or case number (if you know): B320617

    Date of the court's decision: 07/19/2022

AO 241
(Rev. 01/15)

Page 4

(5) Citation to the case (if you know): _____ N/A _____

(6) Grounds raised: 1.) INSUFFICIENT EVIDENCE
2.)INEFFECTIVE ASSISTANCE OF COUNSEL

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.   Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☑ Yes    ☐ No

11.   If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court: SUPERIOR COURT - CENTRAL

(2) Docket or case number (if you know): BA376429

(3) Date of filing (if you know): 07/08/2020

(4) Nature of the proceeding: HABEAS CORPUS PETITION

(5) Grounds raised: 1.) CHIU CLAIM.
2.) BANKS/CLARK CLAIM

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result: ~~09/21/2020~~ DENIED

(8) Date of result (if you know): 09/21/2020

AO 241
(Rev. 01/15)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court: COURT OF APPEAL

    (2) Docket or case number (if you know): B320617

    (3) Date of filing (if you know): 05/27/2022

    (4) Nature of the proceeding: HABEAS CORPUS PETITION

    (5) Grounds raised: 1.) CHIU CLAIM.

    2.) BANKS/CLARK CLAIM.

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐ Yes   ☑ No

    (7) Result: DENIED

    (8) Date of result (if you know): 07/19/2022

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court: SUPREME COURT OF CALIFORNIA

    (2) Docket or case number (if you know): S276033

    (3) Date of filing (if you know): 07/31/2022

    (4) Nature of the proceeding: HABEAS CORPUS PETITION

    (5) Grounds raised: 1.) CHIU CLAIM

    2.) BANKS/CLARK CLAIM

AO 241
(Rev. 01/15)

Result (attach a copy of the court's opinion or order, if available):  DENIED. (SEE,
EXHIBIT A, ATTACHMENT G.)

(3) Did you receive a hearing on your motion or petition?                    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?               ☐ Yes    ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:              N/A

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Two :              N/A

**GROUND THREE:**              N/A

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

AO 241
(Rev. 01/15)

Page 10

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

_____

_____

(c)    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ❐ Yes      ❐ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❐ Yes      ❐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?          ❐ Yes      ❐ No

(4) Did you appeal from the denial of your motion or petition?      ❐ Yes      ❐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ❐ Yes      ❐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

AO 241
(Rev. 01/15)

Page 11

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:    N/A

_____

**GROUND FOUR:**    N/A

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why:    _____

_____

_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:    _____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    _____

AO 241
(Rev. 01/15)

Name and location of the court where the motion or petition was filed:

_____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?                                    ☐ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?                            ☐ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

_____

_____

_____

_____

_____

AO 241
(Rev. 01/15)

13.    Please answer these additional questions about the petition you are filing:

    (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? ☑ Yes    ☐  No

           If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

_____

    (b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

_____

_____

_____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ☐  Yes    ☑ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ☐  Yes    ☑ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

_____

_____

AO 241
(Rev. 01/15)

Page 14

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:    MICHELE HALL, DEPUTY
ALTERNATE PUBLIC DEFENDER

(b) At arraignment and plea:

(c) At trial:    MICHELE HALL, DAPD

(d) At sentencing:    MICHELE HALL, DAPD

(e) On appeal:    JERALYN KELLER, 790 E. COLORADO
BLVD, SUITE 900, PASADENA, CA. 91101 - 2413

(f) In any post-conviction proceeding:    N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:    N/A

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?    ☐ Yes    ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?    ☐ Yes    ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

N/A — PETITION IS TIMELY.

AO 241
(Rev. 01/15)

_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 01/15)

Page 16

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:    ANY AND ALL OTHER RELIEF, GRANTED TO THE PETITIONER.

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on X _1 - 1 - 2o23_ (month, date, year).

Executed (signed) on    X _/-1- 2o23_ (date).

X _____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

# VERIFICATION
### (C.C.P. § 446 & 2015.5 28 U.S.C. § 1746)

STATE OF CALIFORNIA
COUNTY OF IMPERIAL

I, MIGUEL A. SALAZAR DECLARE UNDER PENALTY OF PERJURY THAT I AM THE PETITIONER IN THE ABOVE ENTITLED ACTION. I HAVE READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF AND THE SAME IS TRUE OF MY OWN KNOWLEDGE EXCEPT AS TO MATTERS STATED THEREIN UPON INFORMATION AND BELIEF, AND AS TO THOSE MATTERS, I BELIEVE THEM TO BE TRUE.

EXECUTED THIS X 1 DAY OF X 1. 2023 AT CENTINELA STATE PRISON, IMPERIAL CALIFORNIA 92251.

X _____ (DECLARANT/PRISONER)
SIGNATURE

# PROOF OF SERVICE BY MAIL
### (C.C.P. § 1013(a) & 2015.5 U.S.C. § 1746)

I, MIGUEL A. SALAZAR AM A RESIDENT OF CENTINELA STATE PRISON, IN THE COUNTY OF IMPERIAL, STATE OF CALIFORNIA. I AM OVER EIGHTEEN (18) YEARS OF AGE, AND AM/AM NOT A PARTY OF THE ABOVE ENTITLED ACTION. MY STATE PRISON ADDRESS IS 2302 BROWN ROAD, IMPERIAL, CALIFORNIA 92251.

ON, X 1-1-2023 , I SERVED THE FOREGOING:

1) PETITION UNDER 28 U.S.C § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY
### SET FORTH EXACT TITLE OF DOCUMENT(S) SERVED)

ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY THEREOF, ENCLOSED IN A SEALED ENVELOPE(S) WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO PROVIDED AT THE CENTINELA STATE PRISON, IMPERIAL, CALIFORNIA 92251.

1.) 40 CLERK OF THE COURT
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
255 E. TEMPLE ST. RM #180
LOS ANGELES, CA. 90012

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED AND THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE SO ADDRESSED. I DECLARE UNDER PENALTY OF PERJURY THE FOREGOING IS TRUE AND CORRECT.

DATE X 1-1-2023

X _____ 
(DECLARANT/PRISONER)

# EXHIBIT A

HC-001

Name: Miguel Angel Salazar

Address: Centinela State Prison

P.O. Box 921/CI-118

Imperial, CA 92251

CDC or ID Number: AP5667

Supreme Court of California

County of San Francisco

*(Court)*

| | |
|---|---|
| Miguel Angel Salazar | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner | |
| vs. | No. _____ |
| Raymond Madden, Warren | *(To be supplied by the Clerk of the Court)* |
| Respondent | Evidentiary Hearing Requested |

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original of the petition and one set of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2018). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved for Optional Use
Judicial Council of California
HC-001 [Rev. January 1, 2019]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.
Cal. Rules of Court, rule 8.380
www.courts.ca.gov

HC-001

This petition concerns:

☒ A conviction                    ☐ Parole

☒ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison discipline

☐ Other (specify): _____

1. Your name: Miguel Angel Salazar

2. Where are you incarcerated? Centinela State Prison

3. Why are you in custody?  ☒ Criminal conviction    ☐ Civil commitment

   *Answer items a through i to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").
      First Degree Murder, Carjacking, and Special Circumstance Allegation

   b. Penal or other code sections: 187(a), 215, 190.2(a)(17)(L)

   c. Name and location of sentencing or committing court:
      Superior Court- Central District
      210 W. Temple St., Los Angeles, CA. 90012

   d. Case number: FA376429

   e. Date convicted or committed: 2015

   f. Date sentenced: May 16, 2015

   g. Length of sentence: LWOP

   h. When do you expect to be released? N/A

   i. Were you represented by counsel in the trial court? ☒ Yes  ☐ No    *If yes, state the attorney's name and address:*
      Michelle Jean Hall
      320 W. Temple ST. Room 35
      Los Angeles, CA. 90012

4. What was the LAST plea you entered? *(Check one):*
   ☒ Not guilty  ☐ Guilty  ☐ Nolo contendere  ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?
   ☒ Jury  ☐ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

HC-001

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

See, Page 5 of the petition

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*.

See, Page 5 of the petition

b. Supporting documents:

Attach declarations, relevant records, transcripts, or other documents supporting your claim. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

See, Exhibit A.

c. Supporting cases, rules, or other authority *(optional)*:

(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

See, Page 10-13.

HC-001

7. Ground 2 or Ground _____ *(if applicable):*
   See, page 14 of the petition

a. Supporting facts:
   See, Page 4- 6 and Exhibit A- Court of Appeal Opinion, dated
   10/1/2014.

b. Supporting documents:
   See, Exhibit A- Court of Appeal Opinion, dated 10/1/2014
   See, Exhibit C- Respondent's Brief, dated 04/2/2014

c. Supporting cases, rules, or other authority:
   See, Page 14- 19

HC-001

7. Ground 2 or Ground _____ (if applicable):

Ineffective Assistance of counsel for failure to raise accidental death defense, in violation of the United States Constitution 6th Amendment, right to counsel

a. Supporting facts:

1. During Trial, Defense counsel failed to raise an accidental death defense.

2. The evidence showed that two unidentified men approach Aguilar's vehicle. A few seconds later, a person (later identified as Aguilar) exited the vehicle, and appeared to struggle with one of the men. Aguilar moved to the side of the front passenger door of the vehicle, raising his hand and holding his head. As the man started into reverse and turned, the front and appeared to strike Aguilar from such his body. The vehicle then appeared to rise as if running over something, after which it moved forward, again rising as if running over something, though then the video one could not see precisely what it ran over. The vehicle then drove off. (See, Exhibit " at p. 2.)

3. Defense counsel had evidence before him that could have presented a reasonable doubt as to an accidental death defense, as the record is clear that the two unidentified men were in the of assaulting the rights of Aguilar. There was no evidence that the two unidentified men who that Aguilar had been ran over by the vehicle as Aguilar try to defend the view of the two unidentified men.

4. Defense counsel failed to bring this evidence to the court's and jury's attention that petitioner did not cause the death of Aguilar.

b. Supporting documents:

Exhibit B- Court of Appeal Opinion

Exhibit C- Respondent's Brief

c. Supporting cases, rules, or other authority:

Strickland v. Washington, 466 U.S. 688 (1984)

Higgins v. Smith, 539 U.S. 510 (2003)

HC-001

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes ☐ No   *If yes, give the following information:*

a. Name of court ("Court of Appeal" or "Appellate Division of Superior Court"):
Court of Appeal, Second Appellate District, Division Four

b. Result: Denied                                    c. Date of decision: 10/1/2014

d. Case number or citation of opinion, if known: B248983

e. Issues raised: (1) Insufficient Evidence

     (2) Ineffective Assistance of Counsel

     (3)

f. Were you represented by counsel on appeal? ☐ Yes ☐ No   *If yes, state the attorney's name and address, if known:*
Jeralyn Keller, 790 E. Colorado Blvd., Ste. 900
Pasadena, CA. 91101-2113

9. Did you seek review in the California Supreme Court? ☑ Yes ☐ No   *If yes, give the following information:*

a. Result: Denied                                    b. Date of decision: Unknown

c. Case number or citation of opinion, if known: Unknown

d. Issues raised: (1) Insufficient Evidence

     (2) Ineffective Assistance of Counsel

     (3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal (see *In re Dixon* (1953) 41 Cal.2d 756, 759):
The claims are "New Law".

11. Administrative review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Dexter* (1979) 25 Cal.3d 921, 925.) Explain what administrative review you sought or explain why you did not seek such review:
N/A

b. Did you seek the highest level of administrative review available? ☐ Yes ☐ No
*Attach documents that show you have exhausted your administrative remedies. (See People v. Duvall (1995) 9 Cal.4th 464, 474.)*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court, including this court? (See *In re Clark* (1993) 5 Cal.4th 750, 767–769 and *In re Miller* (1941) 17 Cal.2d 734, 735.)
☒ Yes   *If yes, continue with number 13.*   ☐ No   *If no, skip to number 15.*

HC-001

13. a. (1) Name of court: Superior Court-Central District

   (2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Petition

   (3) Issues raised: (a) Chiu Claim

      (b) Banks/Clark claim

   (4) Result (attach order or explain why unavailable): Denied (Exhibit B)

   (5) Date of decision: 05/23/2020

b. (1) Name of court: Court of Appeal, Second Appellate District, Division Four

   (2) Nature of proceeding: Habeas Petition

   (3) Issues raised: (a) Chiu Claim

      (b) Banks/Clark Claim

   (4) Result (attach order or explain why unavailable): Denied (See, Exhibit C)

   (5) Date of decision: 07/19/2022

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result: N/A

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Robbins (1998) 18 Cal.4th 770, 780.)
The claims are "New Law"

16. Are you presently represented by counsel? ☐ Yes ☒ No   If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes ☒ No   If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
This court has jurisdiction over this petition.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 7-31-2022

_____
(SIGNATURE OF PETITIONER)

HC-001 [Rev. January 1, 2019]          **PETITION FOR WRIT OF HABEAS CORPUS**          Page 6 of 6

TABLE OF CONTENTS

Statement of the case.................................... 1.

Statement of the facts.................................. 4.

Explanation and Justification for relay................. 7.

Grounds for relief..................................... 9.

   1. This petition alleges reversal of my first-degree murder
      conviction is required under _People v. Chiu_ (2014) 59 Cal.
      4th 155............................................. 9.

   2. The Evidence is insufficient to support the jury's special
      circumstances findings and petitioner's consecutive LWOP
      sentence............................................ 14.

Court of Appeal denial is unreasonable................. 20.

Conclusion............................................. 22.

Proof of Service....................................... 23.

Exhibits A--G

The amended information sought enhanced punishment based on the allegation Aguilar's murder occurred while Salazar was engaged in the commission of a carjacking, a special circumstance under section 190.2, subdivision (a)(17)(L).[3] (CT 59)

A jury found Salazar guilty of the first degree murder of Aguilar and of carjacking and found the special circumstance true. (CT 131-132, 133-134, RT 104)

The court sentenced Salazar to a term of life without parole on count one as required by section 190.2 and imposed and stayed a 5-year term on count two under s Penal Code section 206, 286, 288, 288a, 215 and 654. (CT 136, RT 110-111)

The court ordered Salazar to pay a $300 restitution fine under section 1202.4 and to reimburse $7,500 to the Restitution Fund. The court also ordered him to pay an $80 state-penalty assessment under section 1464, a

---

[3]    Aguilar was killed in 2007. Former Penal Code section 190.2 was in effect at that time. Although there have been changes to section 190.2, the special circumstance alleged against Salazar has remained unchanged. The language of Former Penal Code section 190.2, subdivision (a)(17)(L) is identical to the language contained in current section 190.2, subdivision (a)(17)(L).

$16 state-criminal surcharge under section 1465.7, an $80 court-security assessment under section 1465.8, subdivision (a)(1), a $40 DNA-penalty assessment under Government Code section 76104.6, subdivision (a)(1), an additional $40 DNA-penalty assessment under Government Code section 76104.7, subdivision (a)(1), a $40 state-construction penalty under Government Code section 70372, and an $80 criminal-conviction assessment under Government Code section 70373. (CT 137, RT 111-112, 113)

The court also ordered Salazar to submit the biological exemplars required by section 296. (CT 137, RT 112)

At sentencing, the court granted the prosecution's request to dismiss two pending cases identified as case numbers BA306821 and BA317374. (RT 113)

...y authorized.

# STATEMENT OF THE CASE

An amended information charged Miguel Salazar with the murder

of Rene Aguilar in violation of Penal Code section 187, subdivision (a)[1]

(count one) and with carjacking Aguilar's car in violation of section 215

(count two). (CT 59-60[2])

## STATEMENT OF THE FACTS

Reyes met Salazar at the apartment Salazar shared with his girl-friend, Anabel Correa. Enrique Reyes wanted to steal a car and enlisted Salazar to help him do so. (RT 59)

During the early morning hours of June 17, 2007, the trio left the apartment and went to a parking lot adjacent to a strip mall at the corner of Vernon Avenue and Wall Street in Los Angeles to implement the plan. (RT 50, 61)

Reyes and Salazar entered the parking lot; Correa did not. (RT 51) Twenty minutes after Reyes and Salazar entered the lot, Correa heard a screeching sound. (RT 51)

Salazar later told Correa he and Reyes had difficulty wresting the vehicle away from its occupant; and, during the fracas, they had run over a man later identified as Rene Aguilar. Salazar told Correa he had run over the victim, but, Salazar also claimed he could not remember what had happened. (RT 31, 51)

After his arrest, Reyes told police Salazar had been the driver when Aguilar was run over. But, before trial, Reyes announced he would not testify under oath that Salazar had been the driver. (SUPP-CT 1-2, RT 76)

Miguel Terresas, a Los Angeles Police Department officer assigned to investigate Aguilar's death, recovered a video from a surveillance camera mounted on one of the businesses in the strip mall. (RT 32)

The video shows an unidentifiable figure approach Aguilar's vehicle in the parking lot. (RT 35, 46, People's Exhibit No.12 at 3:46:42[4]) About two minutes later, another unidentifiable figure approaches Aguilar's vehicle. (RT 38, 46, People's Exhibit No. 12 at 3:48:12) Over the next few minutes various unidentifiable figures appear outside Aguilar's vehicle. (People's Exhibit No. 12 at 3:49:10-3:49:23.) Although Terresas stated the video is too

---

[4]    The video tape contains a printed record of the time. The testimony at trial did not establish whether the times recorded on the video corresponds to the time the video was recorded or is merely an indication of how long the video has been running. Appellant's opening brief abbreviates the time by listing the hour, the minute, and the second at which an event is recorded. Thus 3:46:32 indicates that the event appears on the tape at a point where the time on the tape is 3 hours, 46 minutes and 32 seconds.

grainy to see exactly how the figures interact, he opined a struggle ensued. (RT 38, 40, People's Exhibit No. 12 at 3:49:22-23)

The video then shows Aguilar's vehicle leaving the parking lot. Although Terresas testified the quality of the video is far too poor to tell exactly what is happening as the vehicle leaves the parking lot, he opined the vehicle's reverse movement as it backs out of the parking spot and the vehicle's forward movement as it leaves the parking lot are consistent with hitting an object or an individual. (RT 41-42, 46)

A coroner performed an autopsy on Aguilar several days after his death and determined that Aguilar died because of multiple injuries and fractures caused by blunt force trauma to the skull, ribs, and hips. (RT 77)

A witness identified Reyes as a possible suspect to the investigating officers, and Reyes identified Salazar as his cohort. (RT 65, 67)

## EXPLANATION AND JUSTIFICATION FOR DELAY

On September 21, 2020, the Superior Court stated in its finding and order:

Petitioner's claims are both untimely and without merit. (See, Exhibit E at p. 4.) The Superior Court is wrong. Petitioner claims are a significant change in the law and need not explain and justify why his claims are brought five or six years later. The California Supreme Court has not establish a time frame of when a petitioner must file a Chiu or Banks/Clark claim in the state courts. Petitioner claims are not untimely as the superior court suggests in its denial order dated September 21, 2020. Petitioner's petition is timely and should be considered on its merit. Furthermore, the facts of the instant case are not distinguishable and far more egregious than the facts set forth in either Chiu or Banks. Petitioner's case have not received the factors as set forth in People v. Banks and People v. Clark, as his conviction was before these two cases decision.

On July 7, 2021, the petitioner's counsel letter is attached as an Exhibit I, which explains and justify why his petition is late in this court. In People v. Miguel Salazar, Court of Appeal (case no. B245565), petitioner was advised by his counsel to refile his habeas petition because the rules do not permit appealing a denial of a petition for writ of habeas corpus which the petitioner misunderstood the rules of court. Petitioner's counsel filed a (People v. Serrano (2012) 211 Cal. App. 4th 496) brief which is attached as Exhibit D and explains the reasons why this petition is late in this court. This error should not be attributed to petitioner because of his pro per status in this case. These explainations offered by petitioner is justifiable to excuse any

untimely petition in this court and is appropriate to assert Banks or Chiu error in a timely fashion of these particular decisions.

Finally, The law in regard to the special circumstance found true in this case has substantially changed since the date of Petitioner's conviction in May 16, 2013. The Supreme court has determined that further definition of Major participant and Reckless indifference is mandated. See, People v. Banks (2015) 61 Cal. 4th 788 and People v. Clark, (2016) 63 Cal. 4th 522; In re Scoggins, (2020) 9 Cal. 5th 667, 671. The Superior court order, dated September 21, 2020, is insufficient without holding an Evidentiary Hearing to apply the new factors, as set forth in Banks and Clark. (See, Exhibit E.)

This court should rule on the merits of the petition and excuse the untimeliness bar.

On November 16, 2021, This Court dismissed petitioner's petition for writ of habeas corpus as a non-appealable issue. Petitioner undue delay should be excused because the appeal was in error. (See, Exhibit F- Court of Appeal Opinion.)(Robinson v. Lewis (2020) 9 Cal.5th 883,895; Briggs v. Brown (2017) 3 Cal. 5th 808, 836 [same].)

In re ___Miguel Angel Salazar_____ *(your full name)*

## CHIU ATTACHMENT:

### ANSWERS TO QUESTION 6, GROUNDS FOR RELIEF
### (JUDICIAL COUNCIL FORM MC-275)

> QUESTION 6: To answer Question 6, write "Please see attached" in the space for that question on the MC-275 form if it is not already printed there.
>
> FILL OUT THE ATTACHMENT: Fill in the blanks that apply to you in the section entitled "(a) Supporting facts," below. Use additional pages if needed.
>
> REVIEW: Read everything very carefully, both the parts already printed and the information you add. Make sure it is all correct and applies to your case. Cross out or change anything that is not accurate. This Attachment, like the MC-275 form, is filed under penalty of perjury.
>
> SIGN, DATE, ATTACH: When you are done with the Attachment, sign and date the "Verification of Attachment" on the last page. Attach all pages (and any additional sheets you needed) to your MC-275 form.

## Question 6: GROUNDS FOR RELIEF

**Ground 1:** This petition alleges reversal of my first-degree murder conviction is

required under *People v. Chiu* (2014) 59 Cal.4th 155.

**(a) Supporting facts**

The crime for which I was convicted is shown in question 3 of my MC-275 form. I

was convicted as an aider and abettor of first-degree murder on the date of

__April 19, 2013_____ (month/day/year) in case number __BA376429_____ (Superior

Court case number). I am currently in custody at this institution: __Centinela State____

__Prison, P.O. Box 921/C3-204, Imperial, CA. 92251_____ (prison name and address).

The jury was instructed on the following theories of guilt for the first-degree

murder charge: __The first degree felony murder rule instructions were given to__

__the jury, these are CALJIC Nos. 8.10; and 8.27. The jury was also instructed__

List all theories of guilt mentioned *in the instructions* for the first-degree murder charge, including the natural and probable consequences doctrine, presented to the jury. Include the CALCRIM jury instruction number if you know it. For example, you might list, "Direct aiding and abetting (CALCRIM No. 401) and the natural and probable consequences doctrine (CALCRIM No. 403)."

☒ I enclose a copy of the transcript from the day the court instructed the jury.

If your transcript is available, check this box and enclose a copy of it with the petition.

There is a reasonable possibility that the jury relied on the natural and probable consequences instruction in reaching its verdict. with CALJIC Nos. 3.00 and 3.01, a possibilty that the jury may have relied on the natural and probable consequence as stated above. (See also; Jury Instructions.)(See also; Exh."A").

_____

_____

Point out evidence introduced *at trial* that your state of mind was not to aid and abet *murder*, but rather to commit another offense, from which the killing arose. If the prosecutor often mentioned the natural and probable consequence theory in argument or questioning, or there were jury questions about that theory, describe all of that in as much detail as possible. If anything occurred that might move the jury away from direct aiding and abetting or another legally correct theory and toward the natural and probable consequences theory, describe that.)

### (b) Supporting authority

#### *Chiu* decision

The California Supreme Court in *People v. Chiu*, *supra*, 59 Cal.4th 155, 158-159, held that an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine. *Chiu* found that a second-degree murder conviction is more closely proportional with a defendant's culpability for aiding and abetting a target crime that would naturally, probably, and foreseeably result in a murder. (*Id.* at p. 166.)

In *Chiu*, two theories of first degree murder were presented to the jury: (1) the defendant directly aided and abetted the murder, and (2) the defendant aided and abetted

the perpetrator of the target offense (disturbing the peace or assault), the natural and probable consequence of which was the victim's murder. (*Chiu, supra*, 59 Cal.4th at p. 160.) After the jury reported itself deadlocked between first and second degree, the trial court removed the holdout juror, who objected to aiding and abetting law as stated in the instructions. The jury then found the defendant guilty of first degree murder. (*Id.* at p. 168.)

On review, the court concluded that the culpability of aider and abettor under the natural and probable consequences doctrine does not reach that required for first degree murder: "[T]he connection between the defendant's culpability and the perpetrator's premeditative state is too attenuated." (*People v. Chiu, supra*, 59 Cal.4th 155, 166.) The court found that an aider and abettor's liability for first degree premeditated murder must be based on *direct* aiding and abetting principles (e.g., CALCRIM No. 401). (*Id.* at pp. 158-159.) That means the jury must find "the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging or facilitating its commission." (*Id.* at p. 167.)

The court found prejudice because it could not conclude, beyond a reasonable doubt, that the jury based its verdict on something other than the legally incorrect natural and probable consequences theory. (*People v. Chiu, supra*, 59 Cal.4th at pp. 167-168.) The court allowed the People to accept a reduction of the conviction to second-degree murder or to retry the first degree murder conviction under a direct aiding and abetting theory. (*Id.* at p. 168.)

11.

**Retroactivity**

*Chiu* did not create new law. Rather, it reinterpreted aider and abettor liability

under Penal Code section 31 and related principles by determining the offender's level of

culpability under the natural and probable consequences doctrine and its relationship with

the degrees of murder. (*Chiu, supra*, 59 Cal.4th 155, 164.) The result is a substantive rule

of law that defines the reach of aider and abettor liability, and therefore it should be fully

retroactive. (See *Schriro v. Summerlin* (2004) 542 U.S. 348, 351-352; *Bousley v. United

States* (1998) 523 U.S. 614, 619-621 [decision that a substantive criminal statute does not

reach certain conduct is fully retroactive]; *People v. Mutch* (1971) 4 Cal.3d 389, 394-396

[reinterpretation of substantive definition of kidnapping applies to defendant whose

conviction became final before *People v. Daniels* (1969) 71 Cal.2d 1119]; *People v.

Canizales* (2014) 229 Cal.App.4th 820 [retroactively applying *Chiu, supra*, 59 Cal.4th

155 to a first degree murder conviction]; *In re Hansen* (2014) 227 Cal.App.4th 906,

916-917 [retroactively applying *People v. Sara Chun* (2009) 45 Cal.4th 1172, on merger

of shooting at inhabited dwelling with resulting homicide, to conviction final on appeal].)

**(c) Request for relief and appointment of counsel**

The jury instructions in my case violated the decision in *People v. Chiu, supra*, 59

Cal.4th 155, in that they allowed an aider and abettor to be found guilty of first degree

murder under the natural and probable consequences doctrine. There is a reasonable

possibility the jury used this theory in arriving at a verdict. I therefore request my first

degree murder conviction be vacated.

12.

I also request that counsel be appointed to represent me at any proceedings ordered by this court. (Cal. Rules of Court, rules 4.551(c)(2), 8.385(f).) I am indigent and unable to hire my own attorney.


# VERIFICATION OF ATTACHMENT


**DECLARATION:** I declare under penalty of perjury under the laws of California that the foregoing is true and correct.


_____

**Date**                              **Signature of Petitioner**

# ARGUMENT

## THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE JURY'S SPECIAL CIRCUMSTANCES FINDINGS AND PETITIONER'S CONSEQUENT LWOP SENTENCE

A.    Introduction

Petitioner was convicted of a murder with special circumstances (Pen. Code, § 190.2) prior to the California Supreme Court's holding in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), wherein the requirements for the sufficiency of evidence for a "major participant" with "reckless indifference to human life" were reinterpreted. Since 2015, courts have reconsidered prior special circumstance findings and found some to be insufficient in light of the factors elaborated in *Banks* and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

In light of *Banks* and *Clark*, petitioner's special circumstance finding must be reversed because there is insufficient evidence that he/she was both a major participant with reckless indifference to human life. Petitioner's LWOP sentence must be vacated and reduced to twenty five years to life.

B.    Petitioner's Claim Is Not Barred

Habeas corpus is an appropriate vehicle for courts to review the sufficiency of special circumstance findings in light of *Banks* and *Clark* in final cases. (*In re Miller* (2017) 14 Cal.App.5th 960 (*Miller*).) A conviction that rests upon insufficient evidence denies the defendant due process. (*Jackson v. Virginia* (1979) 443 U.S. 307.) Petitioner has presented his claim

as soon as practicable given his indigent status and inability to hire an attorney to submit a writ of habeas corpus. Petitioner could not have made the following arguments until after *Banks*, *Clark* and *Miller* clarified the law in this area and he/she has not delayed in doing so.

C.    Applicable Law

Evidence that a defendant was a "major participant" who harbored the required "reckless indifference to human life" is required for the imposition of a special circumstances LWOP sentence. (Pen. Code, § 190.2.)

As guidance the *Banks* Court set forth factors that help to determine whether a defendant's culpability satisfies the "major participant" requirement:

> • What role did the defendant have in planning the criminal enterprise that led to one or more deaths?
> • What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?
> • Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?
> • What did the defendant do after lethal force was used?

Considering the "reckless indifference" element, the Supreme Court in *Clark* cited several relevant factors, including:

> • the use and number of weapons, and defendant's knowledge of them;
> • defendant's physical presence at the scene of the crime and opportunities to stop the crime or aid the victim;

- the duration of the felony;
- the defendant's knowledge that his crime partner was likely to kill; and the
- defendant's effort to minimize the risk of the felony. (*People v. Clark, supra*, 63 Cal. 4th 618-623.)

"No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*People v. Banks, supra*, 61 Cal.4th at 803.)

It is settled law that mere participation in an armed robbery does not *per se* carry a grave risk of death. (*Id.* at 805.) A defendant's awareness that a gun will be used in a felony crime is not sufficient to establish reckless indifference to human life. (*Id.* at 809, *People v. Clark, supra*, 63 Cal.4th at 618.)

D.   Petitioner Was Not Both A "Major Participant" and Someone Who Acted With "Reckless Indifference to Human Life"

The law in regards to the special circumstances found true in this case has substantially changed since the date of petitioner's conviction in May 13, 2014. The Supreme Court has determined that further definition of Major participant and Reckless indifference is mandated. See, People v. Banks (2015) 61 Cal. 4th 788 and People v. Clark (2016) 63 Cal. 4th 522; In re Scoggins (2020) 9 Cal.5th 667, 671.

1. Banks factors indicating a lack of Major participant status.

At the time of petitioner's trial and conviction, prior to the Court's decision in People v. Banks (2015) 61 Cal. 4th 788, the law purportedly allowed for petitioner's conviction as an aider and abettor under a felony murder theory of liability. However, since the Court's decision in Banks, based largely on the United States Supreme Court's

holdings in _Enmund v. Florida_ (1982) 458 U.S. 782 and _Tison v. Arizona_ (1987) 471 U.S. 137, a defendant must do more than commit an underlying felony (Id. at pp. 150-15), and a participant who may have been on the scene who neither intends to kill nor was found to have had any culpable mental state does not play a "notable or conspicuous role" in the actual commission of the underlying felony. (Id. at p. 149). Our Supreme Court has held that there are specific factors set forth in determining whether a defendant is a "major participant".

i. Defendant's lack of a role in the planning of the criminal enterprise that led to the deaths.

There is evidence Petitioner was at the location, entered the car, but there is no evidence of any significant planning prior to the incident.

ii. Defendant did not supply or use the lethal weapons used in the killing.

There is no evidence Petitioner supplied the weapons or was involved in using the weapon.

iii. Defendant was not aware of the dangers of the crime, weapons used, or the experience or conduct of the other participants.

There was no evidence to indicate the Petitioner was aware of any of the above factors.

iv. Defendant was not present at the scene of the killing or in a position to facilitate or prevent the actual murder.

While the evidence does indicate Petitioner may have been present at the scene of the murder, there is no evidence to indicate his involvement in the actual killing.

v. Defendant's actions or inactions did not play a particular role in the death.

There is no evidence to indicate that petitioner played any role in the death.

vi. Defendant's actions after lethal force was used.

There was evidence that Petitioner and Enrique Reyes carjacked Renee Aguilar of his Daewon automobile.

As the Court explained in Clark, however, there is an interrelationship between being a major participant and having reckless indifference to human life. The Court noted that " Tison stated: ' These requirements significantly overlap in both this case and in general, for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life." (Tison, supra, 481 U.S. at p. 153.)

2. Clark factors for reckless indifference to human life.( The prosecution did not argue reckless indifference to human life.) (RT 42). Thus, amplifying the requirement for this analysis under the current law.

In People v. Clark (2016) 63 Cal. 4th 522, the Court found insufficient evidence of a " reckless indifference to human life"by the aider and abettor to support the special circumstance. The Court went on to reverse the robbery special circumstance because there was " nothing in the plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery. " (People v. Clark, supra, 63 Cal. 4th at 623.) That holding must apply here, as no act by petitioner " elevated the risk to human life beyond those risks inherent" within the

18.

meeting of Clark.

    i.  <u>Defendant's lack of knowledge of weapons, and the use and number of weapons.</u>

        There was no evidence to indicate Petitioner knew there was going to be a weapon involved.

    ii.  <u>Defendant's proximity to the crime and lack of an opportunity to stop the killing or aid the victim.</u>

        There is no evidence to indicate the Petitioner had the opportunity to stop the killing or was involved in the killing.

    iii.  <u>The time of occurrence of the murder and the duration of victim's period of restraint by the defendant.</u>

        The murder occurred allegedly while Petitioner was reversing and turning the car. The prosecution does not know who the driver of the car was Petitioner or Co-defendant Enrique Reyes. (<u>See</u>, Exhibit B and C).

    iv.  <u>Defendant's lack of awareness his or her confederate's was likely to kill.</u>

        There is no evidence Petitioner was aware of any confederate's likelihood to kill. The prosecution in closing arguments suggest that either Petitioner or his co-defendant Enrique Reyes was the actual killer. (RT 17-19).


  A copy of the prosecution's Respondent's Brief is attached as Exhibit C. There are no facts in the Respondent's Brief and in the Opinion (Exhibit B) which support a finding that Petitioner was a major participant who acted with reckless indifference to human life. Simply stated, the evidence against Petitioner would not permit a jury to rationally and reasonably conclude that Petitioner was a major participant or that he acted with reckless indifference to human life.

  Accordingly, the special circumstance finding must be vacated, and Petitioner must be resentenced.

COURT OF APPEAL DENIAL WAS UNREASONABLE

On July 19, 2022, the Court of Appeal denied petitioner's ineffective assistance of counsel claim, for three reasons: (1) That the issue could of been raised on appeal in Case No. B248963, (2) That petitioner failed to allege facts establishing an exception to the rule barring habeas consideration of claims that could have been raised on appeal, and (3) That petitioner failed to demonstrate that there was a reasonable probability that a more favorable outcome would have resulted if his trial counsel had raised an accidential death defense. (See, Exhibit G- Court of Appeal Order,) this decision was unreasonable.

First, the Dixon rule almost never applies to claims of IAC, because these claims almost always require evidence that was not in the trial record -e.g., statements from witnesses that laywrs didn't call, declarations from experts the lawyer didn't consult, etc. Indeed, the California Supreme Court expressly held in People v. Tello, 15 Cal. 4th 264 (1997), that except for those extremely rare IAC claims that can be made based solely on what is in the trial record, the proper procedure is to bypass the appeal and bring the IAC claim on habeas corpus. Second, Petitioner followed the proper procedure by bringing his IAC claim through way of habeas corpus, as required under People v. Tello, 15 Cal. 4th 264 (1997). Finally, the Court of Appeal was in error to apply the Dixon rule to petitioner's IAC claim. The Court of Appeal denial must be rejected under Tello. (See, Exhibit G.)

Moreover, the Court of Appeal denial as to petitioner's Banks/Clark claim and People v. Chiu claim must also be rejected, as its decision states as follow: " Petitioner's claim that his first-degree murder conviction should be reversed because he was " an aider and abettor " under People v. Chiu, our appellate opinion in Case No. B248963 clearly negates this claim," (See, Exhibit G), must be rejected in light of People v. Strong, (Dec. 18,2020, C091162)[2020 WL 7417057, nonpub. opn.], review granted Mar. 10 2021, S266606.

Petitioner is a pre-Banks/Clark, and Strong is pending before this Court on whether or not a pre-Banks/Clark is a change in law, this Court should hold this habeas courpus in abeyance pending the decision in Strong. The record does not sufficiently show that the petitioner was the actual killer nor was he a major participant under the new law under Banks/Clark and section 189(e)(3). (See, Exhibit R at p. 2.)

Petitioner respectfully submit that the Court of Appeal denial must be rejected based on the above arguments stated herein.

E.     <u>Conclusion</u>

Without substantial evidence that petitioner was a major participant or acted with reckless disregard for human life, the jury's special circumstance finding cannot stand without violating petitioner's right to due process. Accordingly, the special circumstance findings and petitioner's consequent LWOP sentence must be vacated.

Petitioner is indigent and requests the appointment of counsel to assist if an order to show cause issues.  (<u>*In re Clark*</u> (1993) 5 Cal.4th 750, 780.)

Respectfully Submitted,

Dated:  <u>7-31-2022</u>

Miguel Angel Salazar

In Pro Per

--49--

22.

# PROOF OF SERVICE BY MAIL 📧

**Case :** SALAZAR V. MADDEN

**Court No. :**

I, the undersigned, declare that I am a resident of **Imperial** County, California; that I am over the age of eighteen (18) years; that my residence address is:

**P.O. Box 921/C2-108, IMPERIAL, CA. 92251**

That on the **date of:** ___/___/___, 2022 served the party/parties to within action a true and correct copy of the following document(s):

i.) PETITION FOR WRIT OF HABEAS CORPUS.

By placing thereof into the United States Mail at **Centinela** State Prison, (Facility **C** ) Law Library, enclosed in a sealed envelope with first class postage fully prepaid to the named party/parties addressed as follows:

i.) c/o CLERK OF THE COURT
     SUPREME COURT OF CALIFORNIA
     350 McAllister ~~STREET~~ STREET.
     SAN FRANCISCO, CA. 94102

I declare under penalty of perjury under the laws of the State of California and the Unites States of America that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on the date of __7 / 31 / 22__, 2022 at **IMPERIAL**, California.

X _____
            SIGNATURE

Print name: **Miguel A. Salazar**    C.D.C. & R. No. **AP 5667**

23.

# EXHIBIT COVER PAGE



EXHIBIT

Description of this Exhibit:

1.) REPORTER'S TRANSCRIPTS, DATED APRIL 19,
2013, CASE NO. BA 376429 -01.

Number of pages to this Exhibit: _29_ pages.

1

```
 1   CASE NUMBER:              BA376429-01
 2   CASE NAME:                MIGUEL SALAZAR
 3   LOS ANGELES, CALIFORNIA
 4   DEPARTMENT 105            HON. BOB S. BOWERS, JR., JUDGE
 5   REPORTER:                 SYLVIA A. ALSTON, CSR #6236
 6   DATE:                     APRIL 19, 2013
 7   TIME:                     10:06 A.M.
 8   APPEARANCES
 9                 DEFENDANT SALAZAR, PRESENT
10            WITH COUNSEL, MS. MICHELE HALL,
11            DEPUTY ALTERNATE PUBLIC DEFENDER;
12            KENNES MA, DEPUTY DISTRICT
13            ATTORNEY, REPRESENTING THE PEOPLE
14            OF THE STATE OF CALIFORNIA
15
16         THE COURT:  GOOD MORNING.
17              THE RECORD WILL REFLECT THAT WE ARE AGAIN
18   ON THE RECORD IN THE MATTER OF THE PEOPLE OF THE STATE
19   OF CALIFORNIA VS. MIGUEL ANGEL SALAZAR, BA376429.
20              THE RECORD WILL REFLECT MR. SALAZAR IS
21   PRESENT, RESPECTIVE COUNSEL ARE PRESENT AND THE JURORS
22   ARE SEATED.
23              LADIES AND GENTLEMEN, AT THIS POINT IN THE
24   PROCEEDINGS, WE WILL BEGIN THE CLOSING PHASE, AND AT
25   THIS POINT, I WILL READ TO YOU SOME SO-CALLED
26   PREINSTRUCTIONS IN THIS MATTER AND THEREAFTER THE
27   ATTORNEYS WILL ADDRESS YOU IN FINAL ARGUMENT.
28              THE JURY INSTRUCTIONS ARE BASICALLY
```

2

1 DIVIDED INTO THREE PARTS.  THE FIRST PART WILL BE THE

2 RULES FOR EVALUATING THE EVIDENCE.  THE SECOND PART WILL

3 BE THE ELEMENTS OF THE OFFENSES AND DEFENSES, AND THE

4 THIRD PART WILL BE GUIDELINES FOR YOUR DELIBERATIONS.  I

5 WILL ONLY BE READING TO YOU PARTS 1 AND 2 AT THIS POINT

6 AND WHEN THE ATTORNEYS ARE FINISHED, I WILL READ PART 3

7 TO YOU.

8             BEFORE THE PEOPLE IN THE FRONT ROW BEHIND

9 THE RAIL, THERE ARE COPIES OF THE INSTRUCTIONS I WILL

10 READ TO YOU.  I WILL ASK EACH PERSON IN THE FRONT ROW

11 TO PLEASE PASS A COPY TO THE PERSON BEHIND YOU.

12             YOU ARE NOT REQUIRED TO READ THESE

13 INSTRUCTIONS WITH ME.  SOME PEOPLE ARE BETTER ABLE TO

14 UNDERSTAND THINGS ORALLY.  SOME PEOPLE LIKE TO SEE

15 THINGS WRITTEN.  WHATEVER IS OKAY WITH YOU, THAT'S WHAT

16 YOU DO, BUT YOU ARE NOT REQUIRED TO READ THESE

17 INSTRUCTIONS AS I READ THEM TO YOU.

18             BY THE WAY, IT'S GOING TO TAKE ME BETWEEN

19 30 TO 40 MINUTES TO READ THESE INSTRUCTIONS TO YOU.

20             1.00.  MEMBERS OF THE JURY, YOU HAVE HEARD

21 ALL THE EVIDENCE AND WILL HEAR THE ARGUMENTS OF THE

22 ATTORNEYS, AND NOW IT IS MY DUTY TO INSTRUCT YOU ON THE

23 LAW THAT APPLIES TO THIS CASE.  THE LAW REQUIRES THAT I

24 READ THESE INSTRUCTIONS TO YOU.  YOU WILL HAVE THESE

25 INSTRUCTIONS IN WRITTEN FORM IN THE JURY ROOM TO REFER

26 TO DURING YOUR DELIBERATIONS.

27             YOU MUST BASE YOUR DECISION ON THE FACTS

28 AND THE LAW.  YOU HAVE TWO DUTIES TO PERFORM.  FIRST YOU

1    MUST DETERMINE WHAT FACTS HAVE BEEN PROVED IN THE
2    EVIDENCE RECEIVED IN THE TRIAL AND NOT FROM ANY OTHER
3    SOURCE.
4              A FACT IS SOMETHING PROVED BY THE EVIDENCE
5    OR BY A STIPULATION.  A STIPULATION IS AN AGREEMENT
6    BETWEEN ATTORNEYS REGARDING THE FACTS.
7              SECOND, YOU MUST APPLY THE LAW THAT I
8    STATE TO YOU TO THE FACTS AS YOU DETERMINE THEM AND IN
9    THIS WAY ARRIVE AT YOUR VERDICT AND ANY FINDING YOU ARE
10   INSTRUCTED TO INCLUDE IN YOUR VERDICT.
11             YOU MUST ACCEPT AND FOLLOW THE LAW AS I
12   STATE IT TO YOU REGARDLESS OF WHETHER YOU AGREE WITH IT.
13   IF ANYTHING CONCERNING THE LAW IS SAID BY THE ATTORNEYS
14   IN THEIR ARGUMENTS OR ANY OTHER TIME DURING THE TRIAL
15   CONFLICTS WITH MY INSTRUCTIONS ON THE LAW, YOU MUST
16   FOLLOW MY INSTRUCTIONS.
17             YOU MUST NOT BE BIASED AGAINST THE
18   DEFENDANT BECAUSE HE HAS BEEN ARRESTED FOR THIS OFFENSE,
19   CHARGED WITH A CRIME OR BROUGHT TO TRIAL.  NONE OF THESE
20   CIRCUMSTANCES IS EVIDENCE OF GUILT, AND YOU MUST NOT
21   INFER OR ASSUME FROM ANY OR ALL OF THEM THAT THE
22   DEFENDANT IS MORE LIKELY TO BE GUILTY THAN NOT GUILTY.
23             YOU MUST NOT BE INFLUENCED BY SENTIMENT,
24   CONJECTURE, SYMPATHY, PASSION, PREJUDICE, PUBLIC OPINION
25   OR PUBLIC FEELING.  BOTH THE PEOPLE AND THE DEFENDANT
26   HAVE A RIGHT TO EXPECT YOU WILL CONSCIENTIOUSLY CONSIDER
27   AND WEIGH THE EVIDENCE, APPLY THE LAW, AND REACH A JUST
28   VERDICT REGARDLESS OF THE CONSEQUENCES.

4

1      1.01.  IF ANY RULE, DIRECTION OR IDEA IS

2  REPEATED OR STATED IN DIFFERENT WAYS IN THESE

3  INSTRUCTIONS, NO EMPHASIS IS INTENDED, AND YOU MUST NOT

4  DRAW ANY INFERENCE BECAUSE OF ITS REPETITION.

5      DO NOT SINGLE OUT ANY PARTICULAR SENTENCE

6  OR INDIVIDUAL POINT OR INSTRUCTION AND IGNORE THE

7  OTHERS.  CONSIDER THE INSTRUCTIONS AS A WHOLE AND EACH

8  IN LIGHT OF ALL THE OTHERS.

9      THE ORDER IN WHICH THE INSTRUCTIONS ARE

10  GIVEN HAS NO SIGNIFICANCE AS TO THEIR RELATIVE

11  IMPORTANCE.

12      1.02.  STATEMENTS MADE BY THE ATTORNEYS

13  DURING THE TRIAL ARE NOT EVIDENCE.  HOWEVER, IF THE

14  ATTORNEYS HAVE STIPULATED OR AGREED TO A FACT, YOU MUST

15  REGARD THAT FACT AS PROVEN.

16      IF AN OBJECTION WAS SUSTAINED TO A

17  QUESTION, DO NOT GUESS WHAT THE ANSWER MIGHT HAVE BEEN.

18  DO NOT SPECULATE AS TO THE REASON FOR THE OBJECTION.  DO

19  NOT ASSUME TO BE TRUE ANY INSINUATIONS SUGGESTED BY A

20  QUESTION ASKED A WITNESS.  A QUESTION IS NOT EVIDENCE

21  AND MAY BE CONSIDERED ONLY AS IT HELPS YOU TO UNDERSTAND

22  THE ANSWER.

23      DO NOT CONSIDER FOR ANY PURPOSE ANY OFFER

24  OF EVIDENCE THAT WAS REJECTED OR ANY EVIDENCE THAT WAS

25  STRICKEN BY THE COURT.  TREAT IT AS THOUGH YOU HAD NEVER

26  HEARD OF IT.

27      1.03.  YOU MUST DECIDE ALL QUESTIONS OF

28  FACT IN THIS CASE FROM THE EVIDENCE RECEIVED IN THIS

6

1   NOTES ARE FOR A NOTETAKER'S OWN PERSONAL USE IN

2   REFRESHING HIS HER RECOLLECTION OF THE EVIDENCE.

3           FINALLY, SHOULD ANY DISCREPANCY EXIST

4   BETWEEN A JUROR'S RECOLLECTION OF THE EVIDENCE AND A

5   JUROR'S NOTES OR BETWEEN ONE JUROR'S RECOLLECTION AND

6   THAT OF ANOTHER, YOU MAY REQUEST THAT THE REPORTER READ

7   BACK THE RELEVANT TESTIMONY WHICH MUST PREVAIL.

8           1.23.   TO CONSENT TO AN ACT OR

9   TRANSLATION, A PERSON, NUMBER 1, MUST ACT FREELY AND

10  VOLUNTARILY AND NOT UNDER THE INFLUENCE OF THREATS,

11  FORCE OR DURESS.

12          NUMBER 2, MUST HAVE KNOWLEDGE OF THE TRUE

13  NATURE OF THE ACT OR TRANSACTION INVOLVED.

14          AND NUMBER 3, MUST POSSESS THE MENTAL

15  CAPACITY TO MAKE AN INTELLIGENT CHOICE WHETHER OR NOT TO

16  DO SOMETHING PROPOSED BY ANOTHER PERSON.

17          CONSENT REQUIRES A FREE WILL AND POSITIVE

18  COOPERATION, AN ACT OR ATTITUDE.

19          2.00.   EVIDENCE CONSISTS OF THE TESTIMONY

20  OF WITNESSES, WRITINGS, MATERIAL OBJECTS OR ANYTHING

21  PRESENTED TO THE SENSES AND OFFERED TO PROVE THE

22  EXISTENCE OR NONEXISTENCE OF A FACT.

23          EVIDENCE IS EITHER DIRECT OR

24  CIRCUMSTANTIAL.  DIRECT EVIDENCE IS EVIDENCE THAT

25  DIRECTLY PROVES A FACT.  IT IS EVIDENCE, WHICH BY

26  ITSELF, IF FOUND TO BE TRUE, ESTABLISHES THAT FACT.

27          CIRCUMSTANTIAL EVIDENCE IS EVIDENCE, THAT

28  IF FOUND TO BE TRUE, PROVES A FACT FROM WHICH AN

8

1   POINTS TO THE DEFENDANT'S GUILT AND THE OTHER TO HIS
2   INNOCENCE, YOU MUST ADOPT THAT INTERPRETATION THAT
3   POINTS TO THE DEFENDANT'S INNOCENCE AND REJECT THAT
4   INTERPRETATION THAT POINTS TO HIS GUILT.
5           IF ON THE OTHER HAND ONE INTERPRETATION OF
6   THIS EVIDENCE APPEARS TO YOU TO BE REASONABLE AND THE
7   OTHER INTERPRETATION TO BE UNREASONABLE, YOU MUST ACCEPT
8   THE REASONABLE INTERPRETATION AND REJECT THE
9   UNREASONABLE.
10          2.11.  NEITHER SIDE IS REQUIRED TO CALL AS
11  WITNESSES ALL PERSONS WHO MAY HAVE BEEN PRESENT AT ANY
12  OF THE EVENTS DISCLOSED BY THE EVIDENCE OR WHO MAY
13  APPEAR TO HAVE SOME KNOWLEDGE OF THESE EVENTS.  NEITHER
14  SIDE IS REQUIRED TO PRODUCE ALL OBJECTS OR DOCUMENTS
15  MENTIONED OR SUGGESTED BY THE EVIDENCE.
16          2.11.5.  THERE IS IN EVIDENCE IN THIS CASE
17  INDICATING THAT A PERSON OTHER THAN THE DEFENDANT WAS OR
18  MAY HAVE BEEN INVOLVED IN THE CRIME FOR WHICH THE
19  DEFENDANT IS ON TRIAL.  THERE MAY BE MANY REASONS WHY
20  THAT PERSON IS NOT HERE ON TRIAL.  THEREFORE, DO NOT
21  SPECULATE OR GUESS AS TO WHY THAT OTHER PERSON IS NOT
22  BEING PROSECUTED IN THIS TRIAL OR WHETHER HE HAS BEEN OR
23  WILL BE PROSECUTED.  YOUR SOLE DUTY IS TO DECIDE WHETHER
24  THE PEOPLE HAVE PROVED THE GUILT OF THE DEFENDANT ON
25  TRIAL.
26          2.13.  EVIDENCE THAT AT SOME OTHER TIME A
27  WITNESS MADE A STATEMENT OR STATEMENTS THAT IS OR ARE
28  INCONSISTENT OR CONSISTENT WITHIN YOUR TESTIMONY IN THIS

9

1    TRIAL MAY BE CONSIDERED BY YOU NOT ONLY FOR THE PURPOSE

2    OF TESTING THE CREDIBILITY OF THE WITNESS BUT ALSO AS

3    EVIDENCE OF THE TRUTH OF THE FACTS AS STATED BY THE

4    WITNESS ON THAT FORMER OCCASION.

5              IF YOU DISBELIEVE A WITNESS' TESTIMONY

6    THAT HE OR SHE NO LONGER REMEMBERS A CERTAIN EVENT, THAT

7    TESTIMONY IS INCONSISTENT WITH A PRIOR STATEMENT OR

8    STATEMENTS MADE BY HIM OR HER DESCRIBING THAT EVENT.

9              2.20.  EVERY PERSON WHO TESTIFIES UNDER

10   OATH IS A WITNESS.  YOU ARE SOLE JUDGES OF THE

11   BELIEVABILITY OF A WITNESS AND THE WEIGHT TO BE GIVEN

12   THE TESTIMONY OF EACH WITNESS.

13             IN DETERMINING THE BELIEVABILITY OF A

14   WITNESS, YOU MAY CONSIDER ANYTHING THAT HAS A TENDENCY

15   REASONABLY TO PROVE OR DISPROVE THE TRUTHFULNESS OF THE

16   TESTIMONY OF THE WITNESS, INCLUDING BUT NOT LIMITED

17   PHONEY OF THE FOLLOWING:

18             THE EXTENT OF THE OPPORTUNITY OR ABILITY

19   OF THE WITNESS TO SEE OR HEAR OR OTHERWISE BECOME AWARE

20   OF ANY MATTER ABOUT WHICH THE WITNESS TESTIFIED.

21             THE ABILITY OF THE WITNESS TO REMEMBER OR

22   TO COMMUNICATE ANY MATTER ABOUT WHICH THE WITNESS HAS

23   TESTIFIED.

24             THE CHARACTER AND QUALITY OF THAT

25   TESTIMONY.

26             THE DEMEANOR AND MANNER OF THE WITNESS

27   WHILE TESTIFYING.

28             THE EXISTENCE OR NONEXISTENCE OF A BIAS,

10

1   INTEREST OR OTHER MOTIVE.

2           THE EXISTENCE OR NONEXISTENCE OF ANY FACT

3   TESTIFIED TO BY THE WITNESS.

4           THE ATTITUDE OF THE WITNESS TOWARD THIS

5   ACTION OR TOWARD THE GIVING OF TESTIMONY.

6           THE STATEMENT PREVIOUSLY MADE BY THE

7   WITNESS THAT IS CONSISTENT OR INCONSISTENT WITH HIS OR

8   HER TESTIMONY.  AN ADMISSION BY THE WITNESS OF

9   UNTRUTHFULNESS.

10          2.21.1.  DISCREPANCIES IN A WITNESS'

11  TESTIMONY OR BETWEEN A WITNESS' TESTIMONY AND THAT OF

12  OTHER WITNESSES, IF THERE WERE ANY, DO NOT NECESSARILY

13  MEAN THAT A WITNESS SHOULD BE DISCREDITED.  FAILURE OF

14  RECOLLECTION IS COMMON.  INNOCENT MISRECOLLECTION IS NOT

15  UNCOMMON.  TWO PERSONS WITNESSING AN INCIDENT OR

16  TRANSACTION OFTEN WILL SEE OR HEAR IT DIFFERENTLY.  YOU

17  SHOULD CONSIDER WHETHER A DISCREPANCY RELATES TO AN

18  IMPORTANT MATTER OR ONLY TO SOMETHING TRIVIAL.

19          2.21.2..  A WITNESS WHO WAS WILFULLY FALSE

20  IN ONE MATERIAL PART OF HIS OR HER TESTIMONY IS TO BE

21  DISTRUSTED IN OTHERS.  YOU MAY REJECT THE WHOLE

22  TESTIMONY OF A WITNESS WHO WILFULLY HAS TESTIFIED

23  FALSELY AS TO A MATERIAL POINT UNLESS FROM ALL THE

24  EVIDENCE, YOU BELIEVE THE PROBABILITY OF TRUTH FAVORS

25  HIS OR HER TESTIMONY IN OTHER PARTICULARS.

26          2.22.  YOU ARE NOT REQUIRED TO DECIDE AN

27  ISSUE OF FACT IN ACCORDANCE WITH THE TESTIMONY OF THE

28  NUMBER OF WITNESSES WHICH DOES NOT CONVINCE YOU AS

1    AGAINST THE TESTIMONY OF A LESSER NUMBER OR OTHER

2    EVIDENCE WHICH YOU FIND MORE CONVINCING.

3            YOU MAY NOT DISREGARD THE TESTIMONY OF THE

4    GREATER NUMBER OF WITNESSES MERELY FROM CREASE,

5    PREJUDICE OR FROM A DESIRE TO FAVOR ONE SIDE AGAINST THE

6    OTHER.  YOU MUST NOT DECIDE AN ISSUE BY THE SIMPLE

7    PROCESS OF COUNTING THE NUMBER OF WITNESSES.  THE FINAL

8    TEST IS NOT IN THE NUMBER OF WITNESSES BUT IN THE

9    CONVINCING FORCE OF THE EVIDENCE.

10           2.27.  YOU SHOULD GIVE THE TESTIMONY OF A

11   SINGLE WITNESS WHATEVER WEIGHT YOU THINK IT DESERVES.

12   TESTIMONY CONCERNING ANY FACT BY ONE WITNESS WHICH YOU

13   BELIEVE IS SUFFICIENT FOR PROOF OF THAT FACT.  YOU

14   SHOULD CAREFULLY REVIEW ALL EVIDENCE BY WHICH THE PROOF

15   OF THAT FACT DEPENDS.

16           2.71.  AN ADMISSION IS A STATEMENT MADE BY

17   THE DEFENDANT WHICH DOES NOT ITSELF ACKNOWLEDGE ITS

18   GUILT OF THE CRIMES FOR WHICH THE DEFENDANT IS ON TRIAL,

19   BUT WHICH STATEMENTS TENDS TO PROVE HIS GUILT WHEN

20   CONSIDERED WITH THE REST OF THE EVIDENCE.

21           YOU ARE THE EXCLUSIVE JUDGES AS TO WHETHER

22   THE DEFENDANT MADE AN ADMISSION AND IF SO, WHETHER THAT

23   STATEMENT IS TRUE IN WHOLE OR IN PART.

24           EVIDENCE OF AN ORAL ADMISSION OF THE

25   DEFENDANT NOT CONTAINED IN AN AUDIO OR VIDEO RECORDING

26   ARE NOT MADE IN COURT SHOULD BE VIEWED WITH CAUTION.

27           2.72.  NO PERSON MAY BE CONVICTED OF A

28   CRIMINAL OFFENSE UNLESS THERE IS SOME PROOF OF EACH

7

1   INFERENCE OR THE EXISTENCE OF ANOTHER FACT MAY BE DRAWN.

2              AN INFERENCE IS A DEDUCTION OF FACT THAT

3   MAY LOGICALLY AND REASONABLY BE DRAWN FROM ANOTHER FACT

4   OR GROUP OF FACTS ESTABLISHED BY THE EVIDENCE.

5              IT IS NOT NECESSARY THAT FACTS BE PROVED

6   BY DIRECT EVIDENCE.  THEY ALSO MAY BE PROVED BY

7   CIRCUMSTANTIAL EVIDENCE OR BY A COMBINATION OF DIRECT

8   AND CIRCUMSTANTIAL EVIDENCE.

9              BOTH DIRECT AND CIRCUMSTANTIAL EVIDENCE

10  ARE ACCEPTABLE AS A MEANS OF PROOF.  NEITHER IS ENTITLED

11  TO ANY GREATER WEIGHT THAN THE OTHER.

12              2.01.  HOWEVER, A FINDING OF GUILT AS TO

13  ANY CRIME MAY NOT BE BASED ON CIRCUMSTANTIAL EVIDENCE

14  UNLESS THE PROVED CIRCUMSTANCES ARE NOT ONLY CONSISTENT

15  WITH THE THEORY THAT THE DEFENDANT IS GUILTY OF THE

16  CRIME; BUT NUMBER 2, CANNOT BE RECONCILED WITH ANY OTHER

17  RATIONAL CONCLUSION.

18              FURTHER, EACH FACT WHICH IS ESSENTIAL TO

19  COMPLETE A SET OF CIRCUMSTANCES NECESSARY TO ESTABLISH

20  THE DEFENDANT'S GUILT, MUST BE PROVED BEYOND A

21  REASONABLE DOUBT.

22              IN OTHER WORDS, BEFORE AN INFERENCE

23  ESSENTIAL TO ESTABLISH GUILT TO HAVE BEEN PROVED BEYOND

24  A REASONABLE DOUBT, EACH FACT OR CIRCUMSTANCE ON WHICH

25  THE INFERENCE NECESSARILY RESTS MUST BE PROVED BEYOND A

26  REASONABLE DOUBT.

27              ALSO, IF THE CIRCUMSTANTIAL EVIDENCE

28  PERMITS TWO REASONABLE INTERPRETATIONS, ONE OF WHICH

12

1   ELEMENT OF THE CRIME INDEPENDENT OF ANY ADMISSION MADE

2   BY HIM OUTSIDE OF THIS TRIAL.  THE IDENTITY OF THE

3   PERSON WHO IS ALLEGED TO HAVE COMMITTED A CRIME IS NOT

4   AN ELEMENT OF THE CRIME NOR IS THE DEGREE OF THE CRIME.

5   THE IDENTITY OR DEGREE OF THE CRIME MAY BE ESTABLISHED

6   BY AN ADMISSION.

7            2.90.   A DEFENDANT IN A CRIMINAL ACTION IS

8   PRESUMED TO BE INNOCENT UNTIL THE CONTRARY IS PROVED.

9   IN THE CASE OF A REASONABLE DOUBT, WHETHER HIS GUILT IS

10  SATISFACTORILY SHOWN, IS ENTITLED TO A VERDICT OF NOT

11  GUILTY.  THIS PRESUMPTION PLACES UPON THE PEOPLE THE

12  BURDEN OF PROVING HIM GUILTY BEYOND A REASONABLE DOUBT.

13           REASONABLE DOUBT IS DEFINED AS FOLLOWS:

14  IT IS NOT A MERE POSSIBLE DOUBT BECAUSE EVERYTHING

15  RELATING TO HUMAN AFFAIRS IS OPEN TO SOME POSSIBLE OR

16  IMAGINARY DOUBT.  IT IS THAT STATE OF THE CASE, WHICH

17  AFTER THE ENTIRE COMPARISON AND CONSIDERATION OF ALL THE

18  EVIDENCE LEAVES THE MINDS OF THE JURORS IN THAT

19  CONDITION THAT THEY CANNOT SAY THEY FEEL AN ABIDING

20  CONVICTION OF THE TRUTH OF THE CHARGE.

21           3.00.   PERSONS WHO ARE INVOLVED IN

22  COMMITTING A CRIME ARE REFERRED TO AS PRINCIPALS IN THAT

23  CRIME.  EACH PRINCIPAL, REGARDLESS OF THE EXTENT OR

24  MANNER OF PARTICIPATION, IS EQUALLY GUILTY.

25           PRINCIPALS INCLUDE, NUMBER 1, THOSE WHO

26  DIRECTLY AND ACTIVELY COMMIT THE ACT CONSTITUTING THE

27  CRIME; OR NUMBER 2, THOSE WHO AID AND ABET THE

28  COMMISSION OF THE CRIME.

13

1       WHEN THE CRIME CHARGED IS MURDER, THE
2  AIDER AND ABETTOR'S GUILT IS DETERMINED BY THE COMBINED
3  ACTS OF ALL THE PARTICIPANTS AS WELL AS THAT PERSON'S
4  OWN MENTAL STATE.  IF THE AIDER AND ABETTOR'S MENTAL
5  STATE IS MORE CULPABLE OF THAN THAT OF THE ACTUAL
6  PERPETRATOR, THAT PERSON'S GUILT MAY BE GREATER THAN
7  THAT OF THE ACTUAL PERPETRATOR.  SIMILARLY,  THE AIDER
8  AND ABETTOR MAY BE IS LESS THAN THAT OF THE
9  PERPETRATOR'S, IF THE AIDER AND ABETTOR HAS LESS
10 CULPABLE MENTAL STATE.
11       3.8.01.  A PERSON AIDS AND ABETS THE
12 COMMISSION OF A CRIME WHEN HE OR SHE.
13       NUMBER 1, WITH KNOWLEDGE OF THE UNLAWFUL
14 PURPOSE OF THE PERPETRATOR.
15       AND NUMBER 2, WITH THE INTENT OR PURPOSE
16 OF COMMITTING OR ENCOURAGING OR FACILITATING THE
17 COMMISSION OF THE CRIME.
18       AND, NUMBER 3, BY ACT OR ADVICE, AIDS,
19 PROMOTES, ENCOURAGES OR INSTIGATES THE COMMISSION OF THE
20 CRIME.
21       MERE PRESENCE AT THE SCENE OF A CRIME DOES
22 NOT ITSELF ASSIST THE COMMISSION OF THE CRIME AND DOES
23 NOT AMOUNT TO AIDING AND ABETTING.
24       3.02.  ONE AIDS AND ABETS ANOTHER IN THE
25 COMMISSION OF A CRIME, IS NOT ONLY GUILTY OF THAT CRIME
26 BUT IS ALSO GUILTY OF ANY OTHER CRIME COMMITTED BY A
27 PRINCIPLE WHICH IS A NATURAL AND PROBABLE CONSEQUENCE OF
28 THE CRIME ORIGINALLY AIDED AND ABETTED.

14

1          IN ORDER TO FIND THE DEFENDANT GUILTY OF

2   THE CRIME OF MURDER UNDER THIS THEORY, AS CHARGED IN

3   COUNT 1, YOU MUST BE SATISFIED BEYOND A REASONABLE DOUBT

4   THAT NUMBER 1, THE CRIME OF CARJACKING WAS COMMITTED;

5   NUMBER 2, THAT THE DEFENDANT AIDED AND ABETTED THAT

6   CRIME; NUMBER 3, THAT THE CO-PRINCIPAL IN THAT CRIME

7   COMMITTED THE CRIME OF CARJACKING; AND, NUMBER 4, THE

8   CRIME OF MURDER WAS A NATURAL AND PROBABLE CONSEQUENCE

9   OF THE COMMISSION OF THE CRIME OF CARJACKING.

10         IN DETERMINING WHETHER A CONSEQUENCE IS

11  NATURAL AND PROBABLE, YOU MUST APPLY AN OBJECTIVE TEST

12  BASED NOT ONLY ON WHAT THE DEFENDANT ACTUALLY INTENDED,

13  BUT WHAT A PERSON OF REASONABLE AND ORDINARY PRUDENCE

14  WOULD HAVE EXPECTED LIKELY TO OCCUR, THE ISSUE TO BE

15  DECIDED IN LIGHT OF ALL THE CIRCUMSTANCES SURROUNDING

16  THE INCIDENT.

17         A NATURAL CONSEQUENCE IS ONE WHICH IS

18  WITHIN THE NORMAL RANGE OF OUTCOMES THAT MAY BE

19  REASONABLY EXPECTED TO OCCUR, IF NOTHING UNUSUAL HAS

20  INTERVENED. PROBABLE MEANS LIKELY TO HAPPEN.

21         3.31. IN THE CRIME CHARGED IN COUNT 1,

22  NAMELY, MURDER, IN VIOLATION OF PENAL CODE SECTION

23  187(A), AND THE SPECIAL CIRCUMSTANCE, MURDER COMMITTED

24  WHILE ENGAGED IN THE COMMISSION OF THE CRIME OF

25  CARJACKING, IN VIOLATION OF PENAL CODE SECTION 190.2(A)

26  PARAGRAPH (17) SUBPARAGRAPH L, OR WHICH IS LESSER

27  THERETO, NAMELY MURDER IN THE SECOND DEGREE, AND THE

28  CRIME CHARGED IN COUNT 2, NAMELY THE CARJACKING IN,

15

1   VIOLATION OF 215(A).

2          THERE MUST EXIST A UNION OR JOIN OPERATION

3   OF ACT OR CONDUCT AND A CERTAIN SPECIFIC INTENT IN THE

4   MIND OF THE PERPETRATOR.  UNLESS THIS SPECIFIC INTENT

5   EXISTS, THE CRIME OF SPECIAL CIRCUMSTANCE TO WHICH IT

6   RELATES IS NOT COMMITTED OR IS NOT TRUE.

7          THE SPECIFIC INTENT REQUIRED IS INCLUDED

8   IN THE DEFINITIONS OF THE CRIME OR SPECIAL CIRCUMSTANCE

9   ALLEGATION SET FORTH ELSEWHERE IN THESE INSTRUCTIONS.

10          3.40.  THE CRIMINAL LAW HAS ITS OWN WAY OF

11   DEFINING CAUSE.  A CAUSE OF THE MURDER IS AN ACT THAT

12   SETS IN MOTION A CHAIN OF EVENTS THAT PRODUCES AS A

13   DIRECT, NATURAL AND PROBABLE CONSEQUENCE OF THE ACT, THE

14   MURDER AND WITHOUT WHICH THE MURDER WOULD NOT HAVE

15   OCCURRED.

16          6.10.5.  A CONSPIRACY IS AN AGREEMENT

17   BETWEEN TWO OR MORE PERSONS WITH A SPECIFIC INTENT TO

18   AGREE TO COMMIT THE CRIME OF CARJACKING, AND WITH THE

19   FURTHER SPECIFIC INTENT TO COMMIT THAT CRIME FOLLOWED BY

20   AN OVERT ACT COMMITTED IN THIS STATE BY ONE OR MORE OF

21   THE PARTIES FOR THE PURPOSE OF ACCOMPLISHING THE OBJECT

22   OF THE AGREEMENT.

23          CONSPIRACY IS A CRIME, BUT IS NOT CHARGED

24   AS SUCH IN THIS CASE.  IN ORDER TO FIND A DEFENDANT TO

25   BE A MEMBER OF A CONSPIRACY, IN ADDITION TO PROOF OF THE

26   UNLAWFUL AGREEMENT AND SPECIFIC INTENT, THERE MUST BE

27   PROOF OF THE COMMISSION OF AT LEAST ONE OVERT ACT.  IT

28   IS NOT NECESSARY THAT SUCH A FINDING AS TO ANY

16

1  PARTICULAR DEFENDANT, THAT THE DEFENDANT PERSONALLY

2  EXITED THE OVERT ACT, IF HE WAS ONE OF THE CONSPIRATORS

3  WHEN THE ALLEGED OVERT ACT WAS COMMITTED.

4  THE TERM OVERT ACT MEANS ANY STEP TAKEN OR

5  ACT COMMITTED BY ONE OR MORE OF THE CONSPIRATORS WHICH

6  GOES BEYOND MERE PLANNING OR AGREEMENT TO COMMIT A CRIME

7  AND WHICH STEP OR ACT IS DONE IN FURTHERANCE OF THE

8  ACCOMPLISHMENT OF THE OBJECT OF THE CONSPIRACY.

9  TO BE AN OVERT ACT IS A STEP TAKEN OR ACT

10  COMMITTED NEED NOT IN AND OF ITSELF CONSTITUTE THE CRIME

11  OR AN ATTEMPT TO COMMIT THE CRIME, WHICH IS THE ULTIMATE

12  OBJECT OF THE CONSPIRACY, NOR IS IT REQUIRED THAT THE

13  STEP OR ACT IN AND OF ITSELF BE CRIMINAL OR AN UNLAWFUL

14  ACT.

15  6.11.  EACH MEMBER OF A CRIMINAL

16  CONSPIRACY IS LIABLE FOR EACH ACT AND BOUND BY EACH

17  DECLARATION OF EVERY OTHER MEMBER OF THE CONSPIRACY, IF

18  THE ACT OR DECLARATION IS IN FURTHERANCE OF THE OBJECT

19  OF THE CONSPIRACY.

20  THE ACT OF ONE CONSPIRATOR PURSUANT TO OR

21  IN FURTHERANCE OF THE DESIGN THE CONSPIRACY IS THE ACT

22  OF ALL CONSPIRATORS.  A MEMBER OF A CONSPIRACY IS NOT

23  ONLY GUILTY OF THE PARTICULAR CRIME THAT TO HIS

24  ACKNOWLEDGE HIS CO-DEFENDANTS AGREED TO DO, AND DID

25  COMMIT, BUT ALSO LIABLE FOR THE NATURAL AND PROBABLE

26  CONSEQUENCES OF ANY CRIME OF A CO-CONSPIRATOR TO FURTHER

27  THE OBJECT OF THE CONSPIRACY, EVEN THOUGH THAT CRIME WAS

28  NOT INTENDED AS A PART OF THE AGREED UPON OBJECTIVE AND

17

1    EVEN THOUGH HE WAS NOT PRESENT AT THE TIME OF THE

2    COMMISSION OF THAT CRIME.

3              YOU MUST DETERMINE WHETHER THE DEFENDANT

4    IS GUILTY AS A MEMBER OF A CONSPIRACY TO COMMIT THE

5    ORIGINALLY AGREED UPON CRIME OR CRIMES, AND IF SO,

6    WHETHER THE CRIME ALLEGED IN COUNT 1 WAS PERPETRATED BY

7    A CO-CONSPIRATOR IN FURTHERANCE OF THE CONSPIRACY.

8              BEG YOUR PARDON, LADIES AND GENTLEMEN.

9    THAT SHOULD BE THE CRIME ALLEGED IN COUNT 2 WAS

10   PERPETRATED BY A CO-CONSPIRATOR, IN FURTHERANCE OF THAT

11   CONSPIRACY WAS A NATURAL AND PROBABLE CONSEQUENCE OF THE

12   AGREED UPON CRIMINAL OBJECTIVE IN THAT CONSPIRACY.

13       THE COURT:  LADIES AND GENTLEMEN, I EXTEND MY

14   APOLOGIES TO YOU.  6.11.  GO BACK TO THE FOURTH

15   PARAGRAPH, 6.11.

16              6.11.  I WANT TO READ IT THE WAY IT WAS

17   MEANT TO BE SET OUT ORIGINALLY.

18              YOU MUST DETERMINE WHETHER THE DEFENDANT

19   IS GUILTY AS A MEMBER OF A CONSPIRACY TO COMMIT THE

20   ORIGINALLY AGREED UPON CRIME OR CRIMES, AND IF SO,

21   WHETHER THE CRIME ALLEGED IN COUNT 1 WAS PERPETRATED BY

22   A CO-CONSPIRATOR, IN FURTHERANCE OF THAT CONSPIRACY, AND

23   WAS A NATURAL AND PROBABLE CONSEQUENCE OF THE AGREED

24   UPON CRIMINAL OBJECTIVE OF THAT CONSPIRACY.

25              IN DETERMINING WHETHER A CONSEQUENCE IS

26   NATURAL AND PROBABLE, YOU MUST APPLY AN OBJECTIVE TEST

27   BASED NOT ONLY WHAT THE DEFENDANT ACTUALLY EXPENDED, BUT

28   ON WHAT A PERSON OF REASONABLE ORDINARY PRUDENCE WOULD

18

1   HAVE EXPECTED WOULD BE LIKELY TO OCCUR.

2            THE ISSUE IS TO BE DECIDED IN LIGHT OF ALL

3   THE CIRCUMSTANCES SURROUNDING THE INCIDENT.  A NATURAL

4   CONSEQUENCE IS ONE WHICH IS WITHIN THE NORMAL RANGE OF

5   OUTCOMES THAT MAY BE REASONABLY EXPECTED TO OCCUR IF

6   NOTHING UNUSUAL HAS INTERVENED.  PROBABLE MEANS LIKELY

7   TO HAPPEN.

8            6.12.  THE FORMATION AND EXISTENCE OF A

9   CONSPIRACY MAY BE INFERRED FROM ALL CIRCUMSTANCES

10  TENDING TO SHOW THE COMMON INTENT.  IT MAY BE PROVED IN

11  THE SAME WAY AS ANY OTHER FACT MAY BE PROVED, EITHER BY

12  DIRECT TESTIMONY OF THE FACT OR BY CIRCUMSTANTIAL

13  EVIDENCE OR BY BOTH DIRECT AND CIRCUMSTANTIAL EVIDENCE.

14  IT IS NOT NECESSARY TO SHOW THE ALLEGED CONSPIRATORS OR

15  MAKING THEM EXPRESS OR FORMAL AGREEMENT.

16           6.13.  EVIDENCE THAT A PERSON WAS IN THE

17  COMPANY OF OR ASSOCIATED WITH ONE OR MORE OF THE PERSONS

18  ALLEGED OR PROVED TO HAVE BEEN MEMBERS OF A CONSPIRACY

19  IS NOT IN ITSELF SUFFICIENT TO PROVE THAT PERSON WAS A

20  MEMBER OF THE ALLEGED CONSPIRACY.

21           6.18.  EVIDENCE OF THE COMMISSION OF AN

22  ACT WHICH FURTHERS THE PURPOSE OF ALL ALLEGED

23  CONSPIRACY.  I'M SORRY.  EVIDENCE OF THE COMMISSION OF

24  AN ACT WHICH FURTHERED THE PURPOSE OF AN ALLEGED

25  CONSPIRACY IS NOT IN ITSELF SUFFICIENT TO PROVE THAT

26  PERSON COMMITTING THE ACT WAS A MEMBER OF THE ALLEGED

27  CONSPIRACY.

28           8.10.  THE DEFENDANT IS ACCUSED IN COUNT 1

19

OF HAVING COMMITTED THE CRIME OF MURDER, IN VIOLATION OF

PENAL CODE SECTION 187 OF THE PENAL CODE.  EVERY PERSON

WHO LAWFULLY KILLS A HUMAN BEING WITH MALICE

AFORETHOUGHT IS GUILTY OF THE CRIME OF MURDER, IN

VIOLATION OF PENAL CODE SECTION 187.

THE KILLING IS UNLAWFUL IF IT WAS NEITHER

JUSTIFIABLE OR EXCUSABLE.  IN ORDER TO PROVE THIS CRIME,

EACH OF THE FOLLOWING ELEMENTS MUST BE PROVED:

NUMBER 1.  A HUMAN BEING WAS KILLED.

NUMBER 2.  THE KILLING WAS UNLAWFUL.

NUMBER 3.  THE KILLING WAS DONE WITH

MALICE AFORETHOUGHT.

8.11.  MALICE MAY BE EITHER EXPRESS OR

IMPLIED.  MALICE IS EXPRESSED WHEN THERE IS MANIFESTED

AN INTENTION UNLAWFULLY TO KILL A HUMAN BEING.

MALICE IMPLIED, WHEN NUMBER 1, THE KILLING

RESULTED FROM AN INTENTIONAL ACT;

NUMBER 2.  THE NATURAL CONSEQUENCES OF THE

ACT ARE DANGEROUS TO HUMAN LIFE.

NUMBER 3.  THE ACT WAS DELIBERATELY

PERFORMED WITH KNOWLEDGE OF THE DANGER TO AND WITH

CONSCIOUS DISREGARD FOR HUMAN LIFE.

WHEN IT IS SHOWN THAT A KILLING RESULTED

FROM THE INTENTIONAL DOING OF AN ACT WITH EXPRESS OR

IMPLIED MALICE, NO OTHER MENTAL STATE NEED BE SHOWN TO

ESTABLISH THE MENTAL STATE OF MALICE AFORETHOUGHT.

THE MENTAL STATE CONSTITUTING MALICE

AFORETHOUGHT DOES NOT NECESSARILY REQUIRE ANY ILL WILL

20

1  OR HATRED OF THE PERSON KILLED.

2          THE WORD AFORETHOUGHT DOES NOT IMPLY

3  DELIBERATION OR THE LAPSE OF CONSIDERABLE TIME.  IT ONLY

4  MEANS THAT REQUIRED MENTAL STATE MUST PRECEDE RATHER

5  THAN FOLLOW THE ACT.

6          8.20.  MURDER WHICH IS PERPETRATED BY ANY

7  KIND OF WILLFUL, DELIBERATE AND PREMEDITATED KILLING

8  WITH EXPRESS MALICE AFORETHOUGHT IS MURDER OF THE FIRST

9  DEGREE.

10          THE WORD "WILLFUL" AS USED IN THIS

11  INSTRUCTION MEANS INTENTIONAL.  THE WORD "DELIBERATE,"

12  WHICH RELATES TO HOW A PERSON THINKS, MEANS FORMED, OR

13  ARRIVED AT AND DETERMINED UPON AS A RESULT OF CAREFUL

14  THOUGHT AND WEIGHING OF CONSIDERATIONS FOR AND AGAINST

15  THE PROPOSED COURSE OF ACTION.

16          THE WORD PREMEDITATED RELATES TO WHEN A

17  PERSON THINKS AND MEANS CONSIDERED BEFOREHAND.  ONE

18  PREMEDITATES BY DELIBERATING BEFORE TAKING THE ACTION.

19          IF YOU FIND THAT THE KILLING WAS PRECEDED

20  AND ACCOMPANIED BY A CLEAR AND DELIBERATE INTENT ON THE

21  PARTY OF THE DEFENDANT TO KILL, WHICH WAS A RESULT OF

22  DELIBERATION OR PREMEDITATION SO THAT IT MUST HAVE BEEN

23  FORMED UPON PREEXISTING REFLECTION AND NOT UNDER A

24  SUDDEN HEAT OF PASSION OR OTHER CONDITIONS PRECLUDING

25  THE IDEA OF DELIBERATION, IS MURDER OF THE FIRST DEGREE.

26          THE LAW DOES NOT UNDERTAKE TO MEASURE IN

27  UNITS OF TIME THE LENGTH OF THE PERIOD DURING WHICH THE

28  THOUGHT MUST BE PONDERED BEFORE IT CAN RIPEN INTO AN

21

1    INTENT TO KILL WHICH IS TRULY DELIBERATE AND

2    PREMEDITATED.

3            THE TIME WILL VARY WITH DIFFERENT

4    INDIVIDUALS AND UNDER VARYING CIRCUMSTANCES.  THE TRUE

5    TEST IS NOT THE DURATION OF TIME, BUT RATHER THE EXTENT

6    OF THE REFLECTION.

7            A COLD CALCULATED JUDGMENT AND DECISION

8    MAY BE ARRIVED IN A SHORT PERIOD OF TIME, BUT A MERE

9    UNCONSIDERED AND RASH IMPULSE, EVEN THOUGH IT INCLUDES

10   AN INTENT TO KILL, IS NOT DELIBERATION AND PREMEDITATION

11   AS WILL FIX AN UNLAWFUL KILLING AS MURDER OF THE FIRST

12   DEGREE.

13           TO CONSTITUTE A DELIBERATE AND

14   PREMEDITATED KILLING, THE SLAYER MUST WEIGH AND CONSIDER

15   THE QUESTION OF KILLING AND THE REASONS FOR AND AGAINST

16   SUCH A COURSE AND HAVING IN MIND THE CONSEQUENCES, HE

17   DECIDES TO AND DOES KILL.

18           8.21.   THE UNLAWFUL KILLING OF A HUMAN

19   BEING, WHETHER INTENTIONAL, UNINTENTIONAL OR ACCIDENTAL,

20   WHICH OCCURS DURING THE COMMISSION OR ATTEMPTED

21   COMMISSION OF THE CRIME OF CARJACKING IS MURDER OF THE

22   FIRST DEGREE AND THE PERPETRATOR HAD THE SPECIFIC INTENT

23   TO COMMIT THAT CRIME.  THE SPECIFIC INTENT TO COMMIT

24   CARJACKING AND THE COMMISSION OF ATTEMPTED COMMISSION OF

25   THAT CRIME MUST BE PROVED BEYOND A REASONABLE DOUBT.

26           IN LAW, A KILLING OCCURS DURING THE

27   COMMISSION OR ATTEMPTED COMMISSION OF A FELONY SO LONG

28   AS THE FATAL BLOW IS STRUCK DURING ITS COURSE EVEN IF

22

1    DEATH DOESN'T THEN RESULT.

2        8.27.   IF A HUMAN BEING IS KILLED BY ANY

3    ONE OF SEVERAL PERSONS ENGAGED IN THE COMMISSION OR

4    ATTEMPTED COMMISSION OF THE CRIME OF CARJACKING, ALL

5    PERSONS WHO EITHER DIRECTLY AND ACTIVELY COMMIT THE ACT

6    CONSTITUTING THAT CRIME WHO WITH KNOWLEDGE OF THE

7    UNLAWFUL PURPOSE OR PERPETRATED OF THE CRIME AND WITH

8    THE INTENT OR PURPOSE OF COMMITTING, ENCOURAGING,

9    FACILITATING THE COMMISSION OF THE OFFENSE, AIDS,

10    PROMOTES, ENCOURAGE OR INSTIGATE BY ACT OR ADVISE ITS

11    COMMISSION ARE GUILTY OF MURDER OF THE FIRST DEGREE.

12    WHETHER THE KILLING IS INTENTIONAL, UNINTENTIONAL OR

13    ACCIDENTAL.

14        BEFORE A NON-KILLER MAY BE FOUND GUILTY OF

15    THE MURDER PURSUANT TO THE FELONY MURDER RULE, THERE

16    MUST BE A CAUSAL AND TEMPORAL RELATIONSHIP BETWEEN THE

17    UNDERLYING FELON AND THE ACT RESULTING IN THE DEATH.

18        THE CAUSAL RELATIONSHIP REQUIRES SOME

19    LOGICAL CONNECTION BETWEEN THE KILLING AND THE

20    UNDERLYING FELONY BEYOND MERE COINCIDENCE OF TIME AND

21    PLACE.   THE TEMPORAL RELATIONSHIP REQUIRES THAT THE

22    FELONY AND THE KILLING BE PART OF ONE CONTINUOUS

23    TRANSACTION.

24        8.30.   MURDER OF THE SECOND DEGREE IS THE

25    UNLAWFUL KILLING OF A HUMAN BEING WITH MALICE

26    AFORETHOUGHT WHEN THE PERPETRATOR INTENDED UNLAWFULLY TO

27    KILL A HUMAN BEING BUT EVIDENCE IS INSUFFICIENT TO PROVE

28    DELIBERATION AND PREMEDITATION.

24

1  REASONABLE DOUBT THAT HE IS GUILTY OF THE LESSER CRIME.

2          YOU WILL BE PROVIDED WITH GUILTY AND NOT

3  GUILTY VERDICT FORMS AS TO COUNT 1 FOR THE CRIME OF

4  MURDER IN THE FIRST DEGREE, AND LESSER CRIMES THERETO.

5          MURDER IN THE SECOND DEGREE IS A LESSER

6  CRIME TO THAT OF MURDER IN THE FIRST DEGREE.  THUS YOU

7  ARE ORDERED TO DETERMINE WHETHER THE DEFENDANT IS GUILTY

8  OR NOT GUILTY OF MURDER OF THE FIRST DEGREE OR ANY

9  LESSER CRIME THERETO.

10          IN DOING SO, YOU HAVE THE DISCRETION TO

11  CHOOSE THE ORDER TO EVALUATE EACH CRIME AND CONSIDER THE

12  EVIDENCE PERTAINING TO IT.  YOU MAY FIND IT TO BE

13  PRODUCTIVE TO CONSIDER AND REACH TENTATIVE CONCLUSIONS

14  ON ALL CHARGED OR LESSER CRIMES BEFORE REACHING ANY

15  FINAL VERDICT.

16          BEFORE YOU RETURN ANY FINAL OR FORMAL

17  VERDICTS, YOU MUST BE GUIDED BY THE FOLLOWING:

18          NUMBER 1.  IF YOU UNANIMOUSLY FIND THE

19  DEFENDANT GUILTY OF FIRST DEGREE MURDER AS TO COUNT 1,

20  YOUR FOREPERSON SHOULD SIGN AND DATE THE CORRESPONDING

21  GUILTY VERDICT FORM.  ALL OTHER VERDICT FORMS AS TO

22  COUNT 1 SHOULD BE LEFT UNSIGNED.

23          NUMBER 2.  IF YOU ARE UNABLE TO REACH A

24  UNANIMOUS VERDICT AS TO THE CHARGE IN COUNT 1 OF FIRST

25  DEGREE MURDER, DO NOT SIGN ANY VERDICT FORMS AS TO THAT

26  COUNT AND REPORT YOUR DISAGREEMENT TO THE COURT.

27          NUMBER 3.  THE COURT CANNOT ACCEPT A

28  VERDICT OF GUILTY OF SECOND DEGREE MURDER AS TO COUNT 1

25

1  UNLESS THE JURY ALSO UNANIMOUSLY FINDS AND RETURNS A

2  SIGNED VERDICT FORM OF NOT GUILTY AS TO MURDER OF THE

3  FIRST DEGREE IN THE SAME COUNT.

4          IF YOU FIND THE DEFENDANT NOT GUILTY OF

5  MURDER IN THE FIRST DEGREE AS TO COUNT 1, BUT CANNOT

6  REACH A UNANIMOUS AGREEMENT AS TO MURDER OF THE SECOND

7  DEGREE, YOUR FOREPERSON SHOULD SIGN AND DATE THE NOT

8  GUILTY OF MURDER IN THE FIRST DEGREE FORM AND SHOULD

9  REPORT YOUR DISAGREEMENT TO THE COURT.  DO NOT SIGN ANY

10  OTHER VERDICT FORMS.

11          NUMBER 5.  IF YOU UNANIMOUSLY FIND THE

12  DEFENDANT NOT GUILTY OF FIRST DEGREE MURDER, BUT GUILTY

13  OF FIRST DEGREE MURDER, YOUR FOREPERSON SHOULD SIGN AND

14  DATE THE CORRESPONDING VERDICT FORMS.  DO NOT SIGN ANY

15  OTHER VERDICT FORMS AS TO THAT COUNT.

16          8.80.1.  IF YOU FIND THE DEFENDANT IN THIS

17  CASE GUILTY OF MURDER OF THE FIRST DEGREE, YOU MUST THEN

18  DETERMINE IF THE FOLLOWING SPECIAL CIRCUMSTANCE IS TRUE

19  OR NOT TRUE, THAT MURDER WAS COMMITTED WHILE ENGAGED IN

20  THE COMMISSION OF THE CRIME OF CARJACKING, IN VIOLATION

21  OF PENAL CODE SECTION 190.2(A)(17)(L).

22          THE PEOPLE HAVE THE BURDEN OF PROVING THE

23  TRUTH OF THE SPECIAL CIRCUMSTANCE.  IF YOU HAVE A

24  REASONABLE DOUBT AS TO WHETHER THE SPECIAL CIRCUMSTANCE

25  IS TRUE, YOU MUST FIND IT TO BE NOT TRUE.

26          IF YOU FIND THAT A DEFENDANT WAS NOT THE

27  ACTUAL KILLER OF A HUMAN BEING OR IF YOU ARE UNABLE TO

28  DECIDE WHETHER THE DEFENDANT WAS THE ACTUAL KILLER OR AN

26

AIDER AND ABETTOR, YOU CANNOT FIND THE SPECIAL
CIRCUMSTANCE TO BE TRUE UNLESS YOU ARE SATISFIED BEYOND
A REASONABLE DOUBT THAT SUCH DEFENDANT, WITH THE INTENT
TO KILL, AIDED, ABETTED OR ASSISTED, IN ANY ACT IN THE
COMMISSION OF THE MURDER IN THE FIRST DEGREE.

IN ORDER TO FIND A SPECIAL CIRCUMSTANCE
ALLEGED IN THIS CASE TO BE TRUE OR UNTRUE, YOU MUST
AGREE UNANIMOUSLY.  YOU WILL STATE YOUR SPECIAL FINDING
AS TO WHETHER THE SPECIAL CIRCUMSTANCE IS TRUE OR NOT
TRUE ON A FORM THAT WILL BE SUPPLIED.

8.81.17.  TO FIND THAT THE SPECIAL
CIRCUMSTANCE REFERRED TO IN THESE INSTRUCTIONS IS MURDER
IN THE COMMISSION OF CARJACKING IS TRUE, IT MUST BE
PROVED THAT:

NUMBER 1.  THE MURDER WAS COMMITTED WHILE
THE DEFENDANT WAS ENGAGED IN THE COMMISSION OF THE
CARJACKING, AND,

NUMBER 2.  THE MURDER WAS COMMITTED IN
ORDER TO CARRY OUT OR ADVANCE THE COMMISSION OF THE
CRIME OF CARJACKING OR TO FACILITATE THE ESCAPE
THEREFROM OR TO AVOID DETECTION.

IN OTHER WORDS, THE SPECIAL CIRCUMSTANCE
REFERRED TO IN THESE INSTRUCTIONS IS NOT ESTABLISHED IF
THE CARJACKING WAS MERELY INCIDENTAL TO THE COMMISSION
OF THE MURDER.

8.83.1.  THE SPECIFIC INTENT OR MENTAL
STATE WITH WHICH AN ACT IS DONE MAY BE SHOWN BY THE
CIRCUMSTANCES SURROUNDING ITS COMMISSION, BUT YOU MAY

27

1   NOT FIND A SPECIAL CIRCUMSTANCE ALLEGED IN THIS CASE TO

2   BE TRUE UNLESS THE PROVED SURROUNDING CIRCUMSTANCES ARE

3   NOT ONLY, NUMBER 1, CONSISTENT WITH THE THEORY THAT THE

4   DEFENDANT HAD THE REQUIRED SPECIFIC INTENT AND MENTAL

5   STATE; BUT, NUMBER 2, CANNOT BE RECONCILED WITH ANY

6   OTHER RATIONAL CONCLUSION.

7          ALSO, IF THE EVIDENCE AS TO THE SPECIFIC

8   INTENT AND MENTAL STATE IS SUSCEPTIBLE TO TWO

9   INTERPRETATIONS, ONE OF WHICH POINTS TO THE EXISTENCE OF

10  THE SPECIFIC INTENT OR MENTAL STATE AND THE OTHER TO THE

11  ABSENCE OR THE SPECIFIC INTENT OR MENTAL STATE, YOU MUST

12  ADOPT THAT INTERPRETATION THAT POINTS TO THE ABSENCE OF

13  THE SPECIFIC INTENT OR MENTAL STATE.

14          IF ON THE OTHER HAND, ONE INTERPRETATION

15  OF THE EVIDENCE AS TO THE SPECIFIC INTENT OR MENTAL

16  STATE APPEARS TO YOU TO BE REASONABLE, AND THE OTHER

17  INTERPRETATION TO BE UNREASONABLE, YOU MUST ACCEPT THE

18  REASONABLE INTERPRETATION AND REJECT THE UNREASONABLE.

19          8.83.2.  IN YOUR DELIBERATIONS, THE

20  SUBJECT OF PENALTY OR PUNISHMENT IS NOT TO BE DISCUSSED

21  OR CONSIDERED BY YOU.  THAT IS A MATTER WHICH MUST NOT

22  IN ANY WAY AFFECT YOUR VERDICT OR AFFECT YOUR FINDING AS

23  TO THE SPECIAL CIRCUMSTANCE ALLEGED IN THIS CASE.

24          8.46.  THE DEFENDANT IS ACCUSED IN COUNT 2

25  OF HAVING COMMITTED THE CRIME OF CARJACKING, A VIOLATION

26  OF SECTION 215 OF THE PENAL CODE.  EVERY PERSON WHO

27  TAKES A MOTOR VEHICLE IN THE POSSESSION OF ANOTHER FROM

28  HIS OR HER POSSESSION OR IMMEDIATE PRESENCE OR FROM THE

28

PERSON OR IMMEDIATE PRESENCE OF THE PASSENGER OF THE
MOTOR VEHICLE, AGAINST HIS OR HER WILL AND WITH THE
INTENT TO EITHER PERMANENTLY OR TEMPORARILY DEPRIVE THE
PERSON IN POSSESSION OF THE VEHICLE OF HIS OR HER
POSSESSION, ACCOMPANIED BY MEANS OF FORCE OR FEAR, IS
GUILTY OVER CARJACKING, IN VIOLATION OF PENAL CODE
SECTION 215.

AGAINST THE WILL MEANS WITHOUT CONSENT.
THE WORDS TAKE OR TAKING REQUIRE PROOF OF, NUMBER 1,
TAKING POSSESSION OF A MOTOR VEHICLE; AND, NUMBER 2,
MOVEMENT OF THE VEHICLE, SLIGHT OR OTHERWISE.

IMMEDIATE PRESENCE MEANS AN AREA WITHIN
THE ALLEGED VICTIM'S REACH, OBSERVATION OR CONTROL SO
THAT HE OR SHE COULD, IF NOT OVERCOME BY VIOLENCE OR
PREVENTED BY FEAR, RETAIN POSSESSION OF THE SUBJECT
PROPERTY.

IN ORDER TO PROVE THIS CRIME, EACH OF THE
FOLLOWING ELEMENTS MUST BE PROVED:

NUMBER 1.  THE PERSON HAD POSSESSION OF A
MOTOR VEHICLE.

NUMBER 2.  THE MOTOR VEHICLE WAS TAKEN
FROM HIS OR HER POSSESSION OR IMMEDIATE PRESENCE OR FROM
THE PERSON OR IMMEDIATE PRESENCE OF A PASSENGER OF SUCH
VEHICLE.

NUMBER 3.  THE MOTOR VEHICLE WAS TAKEN
AGAINST THE WILL OF THE PERSON IN POSSESSION, AND,

NUMBER 4.  THE TAKING WAS ACCOMPLISHED BY
MEANS OF FORCE OR FEAR.  AND,

29

1          NUMBER 5.   THE PERSON TAKING THE VEHICLE

2    HAD THE INTENT TO EITHER PERMANENTLY OR TEMPORARILY

3    DEPRIVE THE PERSON POSSESSION OF THE VEHICLE OF THAT

4    POSSESSION.

5          17.29.1.   DURING THE COURSE OF THIS TRIAL,

6    THE COURT HAS ADMITTED AUDIOTAPES AND THE RELATED

7    TRANSCRIPTS.   YOU WILL HAVE THESE EXHIBITS TO REVIEW IN

8    THE JURY ROOM.   YOU ARE INSTRUCTED THAT THE AUDIOTAPE IS

9    THE EVIDENCE OF THE CONVERSATION TO WHICH IT PERTAINS.

10   THE TRANSCRIPT IS NOT EVIDENCE OF THE CONVERSATION.

11          AND THAT'S ALL I WANT TO SAY ON THAT.

12          LADIES AND GENTLEMEN, I HAVE READ TO YOU

13   THE SO-CALLED PREINSTRUCTS.   I THINK AT THIS POINT, I'M

14   GOING TO HAVE MR. MA BEGIN HIS CLOSING ARGUMENT.

15          LADIES AND GENTLEMEN, CLOSING ARGUMENT

16   WILL GO AS FOLLOWS.   MR. MA WILL HAVE A CHANCE TO SPEAK

17   TO YOU, AND WHEN HE HAS COMPLETED HIS CLOSING ARGUMENT,

18   MS. HALL WILL HAVE A CHANCE TO SPEAK WITH YOU.   WHEN

19   MS. HALL IS FINISHED, MR. MA HAS ONE LAST CHANCE TO

20   SPEAK TO YOU, AND THEN AT THAT TIME, THE COURT WILL READ

21   TO YOU THE CLOSING INSTRUCTIONS AND THEN THE CASE WILL

22   BE TURNED OVER TO YOU SO YOU CAN BEGIN YOUR

23   DELIBERATIONS.

24          THANK YOU.

25

26

27

28

# EXHIBIT COVER PAGE

B

EXIBIT

Description of this Exhibit:

1.) COURT OF APPEAL OPINION, DATED 10/1/2014

Number of pages to this Exhibit: ___6___ pages.

People v. Salazar, Not Reported in Cal.Rptr.3d (2014)

KeyCite Red Flag - Severe Negative Treatment
Unpublished/noncitable

2014 WL 4923721
Not Officially Published
(Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)
Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

Court of Appeal,
Second District, Division 4, California.

The PEOPLE, Plaintiff and Respondent,
v.
Miguel SALAZAR, Defendant and Appellant.

B248963
|
Filed 10/1/2014

APPEAL from a judgment of the Superior Court of Los Angeles County, Bob S. Bowers, Jr., Judge. Affirmed as Modified. (Super. Ct. No. BA376429)

**Attorneys and Law Firms**

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

WILLHITE, J.

*1 A jury convicted defendant Miguel Salazar of first degree murder (Pen.Code, § 187, subd. (a))[1] and carjacking (§ 215, subd. (a)), and found true the special circumstance allegation that the murder was committed during the commission of carjacking (§ 190.2, subd. (a)(17)(L)). The trial court sentenced defendant to life in prison without the possibility of parole for the special circumstance murder, and a term of five years for the carjacking, stayed under section 654.

Defendant appeals from the judgment. As we explain more fully below, we reject defendant's claims of insufficient evidence, instructional error, and ineffective assistance of counsel. We order the parole revocation fine in the minute order from the sentencing hearing stricken. In all other respects, we affirm the judgment.

## BACKGROUND

Around 3:49 a.m. on June 17, 2007, in the parking lot of a strip mall at the corner of Vernon and Wall in Los Angeles, defendant and an accomplice, Enrique Reyes, carjacked Renee Aguilar of his Daewoo automobile. Aguilar was killed when, after the carjackers entered the vehicle, the car knocked him down and drove over him, inflicting fatal blunt

People v. Salazar, Not Reported in Cal.Rptr.3d (2014)

force trauma injuries. Not until 2010 was defendant identified as a suspect. He was located in Baltimore, Maryland, and transported back to Los Angeles to be charged.

A surveillance video from a laundromat at the strip mall where the killing occurred captured the crime. The video, which was not of sufficient quality to identify the participants, was played for the jury, and still photographs taken from the video were introduced into evidence. As narrated by Los Angeles Police Detective Miguel Terrezas, the video showed two unidentified men approach Aguilar's vehicle and loiter nearby. A few seconds later, a person (later identified as Aguilar) exited the vehicle, and appeared to struggle with one of the men. Aguilar moved to the side of the front passenger door of the vehicle, raising his hand and holding his head. As the car started into reverse and turned, the front end appeared to strike Aguilar and knock him down. The vehicle then appeared to rise as if running over something, after which it moved forward, again rising as if running over something, though from the video one could not see precisely what it ran over. The vehicle then drove off.

Detective Terrezas responded to the scene of the homicide in response to a radio call that there had been a shooting. Once at the location, he learned that the victim had been run over. On the ground he found a "car club" used to prevent vehicle theft, car keys, a flat head screwdriver, and blood.

Anabel Correa, defendant's then-girlfriend, was with defendant and Reyes before the crime. Reyes suggested to defendant that they steal someone's car. Correa urged defendant not to go, but accompanied him when he went with Reyes to Vernon and Wall. She saw them go to the parking lot of the strip mall, and perhaps 15 or 20 minutes later heard screeching noises. Later that morning, Correa asked defendant what had happened. He told her that he and Reyes "were there trying to get the car from the man." She then testified that defendant became angry and told her "they ran over a man. That's all I can remember." Shown a report of a prior statement she made to the police, she "refresh[ed] her [recollection] as to what [defendant] said ... when [she was] asking him questions about" the incident. After refreshing her recollection, she testified that defendant said, "You ... bitch, I ran over the man."

*2 The parties stipulated that if called as a witness, Reyes (who was refusing to leave his cell to come to court) would testify that an audio recording played for the jury with the assistance of a transcript was a true and accurate depiction of an interview with the prosecutor on December 20, 2012. In that interview, Reyes remembered that three years earlier, he had told the prosecutor that "[defendant] was the driver and I was just the passenger." He remembered having said that they "agreed to get into the car ... and [defendant] was just supposed to jump into the driver's seat and take off ... [b]ut homeboy started to fight back." Reyes told the prosecutor that if called as a witness, he would admit that he made these statements, but did not want to say anything more, because he did not "want to incriminate [himself] up [s]tate" where he was housed in prison.


DISCUSSION

1. *Sufficiency of the Evidence/Instructional Error*

The court's instructions on the felony-murder special circumstance allegation erroneously stated that if the prosecution failed to prove that defendant was the actual killer, then the jury could not find the felony-murder special circumstance to be true unless it found that defendant "*with the intent to kill* aided, abetted, or assisted any actor in the commission of the murder in the first degree." (Italics added.)[2] The instruction was incorrect, because the felony-murder special circumstance applies to "a person other than the actual killer ... if that person was a major participant in the underlying felony ... and *either* intended to kill *or acted with reckless indifference to human life.*" (*People v. Cleveland* (2004) 32 Cal.4th 704, 752, italics added.) Neither of those mental states is required for the actual killer. (*People v. Contreras* (2013) 58 Cal.4th 123, 163–164[''[t]he felony-murder special circumstance ... is valid absent any requirement that a defendant who actually killed during an enumerated felony acted with the intent to kill"; also disagreeing with the contention that "to

People v. Salazar, Not Reported in Cal.Rptr.3d (2014)

withstand constitutional scrutiny, the felony-murder special circumstance ... minimally requires a finding of 'reckless indifference to human life' for actual killers lacking an intent to kill."].)

*3 Seizing upon the error in the special circumstance instruction, and characterizing the issue as one of insufficiency of the evidence, defendant contends that the special circumstance finding must be reversed, because the evidence was insufficient to prove that he (as the purported passenger in the carjacked vehicle, not the driver) acted with the intent to kill Aguilar. We disagree.

First, to the extent the issue may be viewed as one of insufficiency of the evidence, it fails because "[w]here the jury considers both a factually sufficient and a factually insufficient ground for conviction, and it cannot be determined on which ground the jury relied, we affirm the conviction unless there is an affirmative indication that the jury relied on the invalid ground." (*People v. Marks* (2003) 31 Cal.4th 197, 233 (*Marks*).) Here, consistent with the evidence provided by Reyes and Correa, the prosecutor's primary theory was that defendant was the actual killer—the driver of the carjacked vehicle. Under that theory, the prosecution was not required to prove that defendant acted with an intent to kill (or reckless disregard for life) in order to sustain the special circumstance.

Substantial evidence clearly supported the conclusion that defendant was the driver. In an interview with the prosecutor (the contents of which were admitted by stipulation), Reyes remembered having told the prosecutor in a prior interview that "[defendant] was the driver and I was just the passenger." He also remembered having said that they "agreed to get into the car ... and [defendant] was just supposed to jump into the driver's seat and take off ... [b]ut homeboy started to fight back." Reyes told the prosecutor that if called as a witness, he would admit that he made these statements, but did not want to say anything more, because he did not "want to incriminate [himself] up [s]tate" where he was housed in prison. Similarly, Correa testified that defendant became angry when she asked him what happened, and all she could remember him saying was that "they ran over a man." However, she refreshed her recollection from a prior written statement and clarified that defendant had said, "You ... bitch, I ran over the man."

Thus, there was ample evidence from which the jury could conclude that defendant was the actual killer of Aguilar. As we have noted, if the jury convicted defendant of first degree murder on that ground, no additional finding that defendant intended to kill (or acted with reckless indifference to life) was required to sustain the special circumstance. (*People v. Contreras, supra,* 58 Cal.4th at pp. 163–164.)

It is true that the prosecutor also argued the jury could conclude that defendant was the passenger in the vehicle, but nonetheless convict him of first degree murder as an aider and abettor of the carjacking, or as a coconspirator in that crime.[3] It is also true that if the jury had a reasonable doubt whether defendant was the actual killer, the jury instructions on the special circumstance purported to require a finding that defendant aided and abetted the murder with the intent to kill. But because the record does not disclose which theory the jury relied on, it is enough that the evidence supports the theory that defendant was the actual killer. On that basis, the special circumstance finding must be affirmed, regardless of defendant's claim that the evidence was insufficient to support the finding against the defendant on an aiding and abetting theory. (*Marks, supra,* 31 Cal.4th at p. 233.)

*4 Second, the issue raised by defendant is more properly viewed not as one of insufficient evidence, but of instructional error in failing to instruct that for a person other than the actual killer, the special circumstance required proof that defendant was a major participant in the underlying felony who acted *either* with an intent to kill *or* with reckless disregard for human life. However, this error, which placed a greater burden on the prosecution than the law requires, could not have possibly prejudiced defendant.

Driver or not, the defendant was necessarily a major participant in the carjacking and acted with reckless indifference to human life. A "major participant" in a carjacking is one who plays a "notable or conspicuous" part or is one of the "more important members" of the group committing the crime. (*People v. Proby* (1998) 60 Cal.App.4th 922, 930–931 [involving

--117--

People v. Salazar, Not Reported in Cal.Rptr.3d (2014)

robbery murder].) Here, along with Reyes, defendant was one of only two persons who committed the carjacking. They conspired to commit the crime beforehand, carried it out together, and fled in the carjacked vehicle together. Thus, there is no doubt that defendant was a major participant in the crime.

Assuming for the sake of argument that defendant was the passenger when Aguilar was struck and run over, defendant's participation in the carjacking also demonstrated reckless indifference to human life. The phrase "reckless indifference to human life" means a "subjective awareness of the grave risk to human life created by [defendant's] participation in the underlying felony." (*People v. Estrada* (1995) 11 Cal.4th 568, 578.) As the United States Supreme Court has observed, the "reckless indifference" and "major participant" requirements often overlap. "[T]here are some felonies as to which one could properly conclude that any major participant necessarily exhibits reckless indifference to the value of human life. Moreover, even in cases where the fact that the defendant was a major participant in a felony did not suffice to establish reckless indifference, that fact would still often provide significant support for such a finding." (*Tison v. Arizona* (1987) 481 U.S. 137, 158, fn. 12.)

As presented at trial, the surveillance video showed that the carjackers loitered near the vehicle while Aguilar was inside. When he emerged, a struggle ensued between Aguilar and one of the carjackers. Aguilar moved to the side of the front passenger door of the vehicle, raising his hand and holding his head. As the car (with both carjackers inside) started into reverse and turned, the front end struck Aguilar and knocked him down. Without stopping, the vehicle then appeared to rise, running over Aguilar, after which it moved forward, running over him again, and drove off.

This evidence leaves no room for argument that defendant (as the purported passenger) was unaware that his participation in the carjacking created a grave risk to Aguilar's life. (*People v. Estrada, supra,* 11 Cal.4th at p. 578.) He had conspired with Reyes to commit the crime, had loitered while Aguilar remained in the car, and at the very least was present when control of the vehicle was wrested from Aguilar by force, even if he himself did not engage in the struggle with Aguilar. Aguilar was standing on the front passenger side of the vehicle, the area of the vehicle where defendant (as the purported passenger) was seated, when the vehicle, traveling in reverse, knocked Aguilar down, ran over him, and then ran over him again as it moved forward. Under these circumstances, defendant, seated in the passenger side of the vehicle, undoubtedly was aware of the vehicle striking and running over Aguilar, and thus was also aware that his participation in the ongoing carjacking created a grave risk to Aguilar's life.

**\*5** In short, defendant cannot benefit from the error in the special circumstance instruction, because beyond any reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18) that error did not contribute to the true finding on the special circumstance finding. A properly instructed jury would necessarily have found the special circumstance allegation true.

### II. *Ineffective Assistance of Counsel*

In closing argument, the prosecutor argued that defendant was guilty of first degree murder under the felony-murder rule, the killing having occurred during the commission of a carjacking, and argued that the evidence proved that defendant was the driver of the vehicle. However, he noted that the jury could believe that defendant was vicariously liable for the murder as an aider and abettor of the carjacking or coconspirator in the carjacking. The prosecutor stated that if the jury believed defendant was guilty of first degree murder committed in the course of a carjacking under any of these theories, then it must find the special circumstance to be true.

Defendant contends that his trial counsel was ineffective for failing to object to the prosecutor's argument that conviction of first degree murder under the felony-murder rule also required a true finding on the felony-murder special circumstance, without any finding that defendant, as the purported passenger in the carjacked vehicle, either intended to kill or was a major participant in the carjacking and acted with reckless indifference to human life. However, for reasons already discussed, it is not reasonably probable that if defense counsel had objected, a different result would have been reached. (*Strickland v. Washington* (1984) 466 U.S. 668, 697 (*Strickland* ) ["If it is easier to dispose of an ineffectiveness

People v. Salazar, Not Reported in Cal.Rptr.3d (2014)

claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."].)
As we have explained, ample evidence proved that defendant was the driver of the vehicle (for whom no additional
mental state beyond that required for carjacking was required for the special circumstance), and the evidence also left
no doubt that, at a minimum, defendant was a major participant in the carjacking and acted with reckless indifference
to human life. Thus, it is not reasonably probable that any misstatement of the law by the prosecutor affected the special
circumstance finding. (*Strickland, supra,* 466 U.S. at p. 694.)

III. *Parole Revocation Fine*

Given defendant's sentence of life without the possibility of parole, he was not eligible for imposition of a parole
revocation fine under section 1202.45. At the oral sentencing proceeding on May 16, 2013, the trial court did not order
such a fine, but a clerical error appears in the minute order from the sentencing hearing reflecting imposition of a $300
parole revocation fine. Defendant contends, and respondent concedes, that the fine must be stricken. We agree, and
order the parole revocation fine appearing in the minute order of May 16, 2013 stricken.

## DISPOSITION

The superior court clerk is directed to delete the $300 parole revocation fine that appears in the minute order from the
sentencing proceeding on May 16, 2013, and to forward the corrected minute order to the Department of Corrections
and Rehabilitation. In all other respects, the judgment is affirmed.

We concur:

EPSTEIN, P.J.

EDMON, J.

**All Citations**

Not Reported in Cal.Rptr.3d, 2014 WL 4923721

Footnotes

1       All section references are to the Penal Code.
2       As for the special circumstance allegation, the court first gave a modified version of CALJIC No. 8.80.1, as follows: "If you
        find the defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance
        is true or not true: That the murder was committed while engaged in the commission of the crime of carjacking in violation
        of Penal Code section 190.2(a)(17)(L). [¶] The People have the burden of proving the truth of a special circumstance. If you
        have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true. [¶] *If you find that a
        defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or
        an aider and abettor, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that
        such defendant with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree.* [¶]
        In order to find a special circumstance alleged in this case to be true or untrue, you must agree unanimously." (Italics added.)
        The court then instructed pursuant to CALJIC No. 8.81.17: "To find that the special circumstance referred to in these
        instructions as murder in the commission of carjacking is true, it must be proved: [¶] 1. The murder was committed while
        the defendant was engaged in the commission of a carjacking; and [¶] 2. The murder was committed in order to carry out
        or advance the commission of the crime of carjacking or to facilitate the escape therefrom or to avoid detection. In other
        words, the special circumstance referred to in these instructions is not established if the carjacking was merely incidental to
        the commission of the murder."

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.                    5

**People v. Salazar, Not Reported in Cal.Rptr.3d (2014)**

3     The trial court instructed the jury on premeditated first degree murder, second degree murder, and first degree felony murder
       (murder during the commission of carjacking). In connection with the felony-murder rule, the court instructed on the vicarious
       liability of an aider and abettor in the underlying carjacking, and on conspiracy liability in relation to the carjacking.

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California
       Constitution.

End of Document                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT COVER PAGE



EXHIBIT

Description of this Exhibit:

1.) RESPONDENT'S BRIEF, DATED APRIL 2, 2014

Number of pages to this Exhibit: ___24___ pages.

# TABLE OF CONTENTS

Page

Statement of the Case ...................................................................................... 1

Statement of Facts .......................................................................................... 2

     A.    Prosecution Evidence ............................................................ 2

     B.    Defense Evidence ................................................................. 5

Argument ......................................................................................................... 5

   I.    Substantial Evidence Was Presented in Support of the Jury's Special Circumstance Finding ..................................... 5

     A.    Applicable Law ...................................................... 5

     B.    Substantial Evidence Was Presented in Support of the Jury's Special Circumstance Finding .............. 8

   II.   Appellant's Prosecutorial Misconduct Claim Has Been Forfeited; Appellant Cannot Demonstrate Defense Counsel Rendered Deficient Performance for Failing to Object to the Prosecutor's Closing Argument, or That He Was Prejudiced By Defense Counsel's Failure to Object ................................................................................ 13

     A.    Relevant Proceedings ............................................... 13

     B.    Appellant's Prosecutorial Misconduct Claim Has Been Forfeited ................................................. 14

     C.    Counsel Was Not Ineffective for Failing to Object to the Prosecutor's Statement During Closing ................................................................... 15

   III.   Even if Errors Occurred at Trial, Appellant Was Not Prejudiced by Their Cumulative Effect ............................... 19

   IV.   Any Reference in the Minute Order and Indeterminate Abstract of Judgment to a Parole Revocation Fine Pursuant to Section 1202.45 Should Be Stricken ................ 19

Conclusion ..................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page**

CASES

*In re Sassounian*
  (1995) 9 Cal.4th 535 ........................................................................ 5

*Jackson v. Virginia*
  (1978) 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560]................5, 12

*People v. Anderson*
  (1987) 43 Cal.3d 1104 ................................................................ 7, 8

*People v. Arias*
  (1996) 13 Cal.4th 92 ..................................................................... 14

*People v. Bean*
  (1988) 46 Cal.3d 919 ....................................................................... 6

*People v. Belmontes*
  (1988) 45 Cal.3d 744 ....................................................................... 7

*People v. Booker*
  (2011) 51 Cal.4th 141 ................................................................... 14

*People v. Brasure*
  (2008) 42 Cal.4th 1037 ...........................................................20, 21

*People v. Brown*
  (2003) 31 Cal.4th 518 ................................................................... 18

*People v. Bunyard*
  (1988) 45 Cal.3d 1189 ................................................................... 15

*People v. Bustos*
  (1994) 23 Cal.App.4th 1747 ........................................................... 8

*People v. Carr*
  (2010) 190 Cal.App.4th 475 ......................................................... 21

*People v. Cleveland*
  (2004) 32 Cal.4th 704 ............................................................8, 9, 12

# TABLE OF AUTHORITIES
## (continued)

Page

*People v. Coffman and Marlow*
(2004) 34 Cal.4th 1.............................................................. 6

*People v. Contreras*
(2013) 58 Cal.4th 123.................................................passim

*People v. Doolin*
(2009) 45 Cal.4th 390........................................................ 17

*People v. Duran*
(2001) 88 Cal.App.4th 1371 ............................................... 6

*People v. Edwards*
(2013) 57 Cal.4th 658........................................................ 6

*People v. Estrada*
(1995) 11 Cal.4th 568....................................................8, 10

*People v. Farnam*
(2002) 28 Cal.4th 107........................................................ 17

*People v. Fernandez*
(2013) 216 Cal.App.4th 540 ............................................. 14

*People v. Freeman*
(1994) 8 Cal.4th 450.......................................................... 16

*People v. Holt*
(1997) 15 Cal.4th 619........................................................ 17

*People v. Jenkins*
(2000) 22 Cal.4th 900........................................................ 19

*People v. Jones*
(2003) 29 Cal.4th 1229...................................................... 19

*People v. Ledesma*
(1987) 43 Cal.3d 171......................................................... 15

**TABLE OF AUTHORITIES**
(continued)

Page

*People v. Letner and Tobin*
(2010) 50 Cal.4th 99 ............................................................... 8

*People v. McWhorter*
(2009) 47 Cal.4th 318 ............................................................ 21

*People v. Mendoza Tello*
(1997) 15 Cal.4th 264 ............................................................ 16

*People v. Mitcham*
(1992) 1 Cal.4th 1027 ............................................................ 15

*People v. Mitchell*
(2001) 26 Cal.4th 181 ..........................................................20, 21

*People v. Morris*
(1988) 46 Cal.3d 1 .................................................................. 5

*People v. Nunez and Satele*
(2013) 57 Cal.4th 1 ................................................................. 8

*People v. Oganesyan*
(1999) 70 Cal.App.4th 1178 ................................................20, 21

*People v. Perez*
(1992) 2 Cal.4th 1117 ..........................................................5, 6

*People v. Price*
(1991) 1 Cal.4th 324 .............................................................. 14

*People v. Prieto*
(2003) 30 Cal.4th 226 ............................................................ 12

*People v. Proby*
(1998) 60 Cal.App.4th 922 ...................................................8, 10

*People v. Sanchez*
(1995) 12 Cal.4th 1 ..............................................................17, 18

# TABLE OF AUTHORITIES
## (continued)

Page

*People v. Sanchez*
  *supra*, 6 Cal.4th .................................................................. 18

*People v. Sapp*
  (2003) 31 Cal.4th 240 ...................................................... 19

*People v. Snow*
  (2003) 30 Cal.4th 43 ........................................................ 16

*People v. Stanley*
  (2006) 39 Cal.4th 913 ...................................................... 16

*People v. Thomas*
  (1992) 2 Cal.4th 489 ........................................................ 17

*People v. Thompson*
  (2010) 49 Cal.4th 79 .......................................................... 6

*People v. Valdez*
  (2012) 55 Cal.4th 82 ........................................................ 19

*People v. Villalobos*
  (2006) 145 Cal.App.4th 310 ........................................... 5, 6

*People v. Williams*
  (2010) 49 Cal.4th 405 ................................................. 10, 11

*People v. Zackery*
  (2007) 147 Cal.App.4th 380 ............................................ 20

*People v. Zamundio*
  (2008) 43 Cal.4th 327 ........................................................ 6

*Strickland v. Washington*
  (1984) 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] ........ 15, 17, 19

*Tison v. Arizona*
  (1987) 481 U.S. 137 [107 S.Ct. 1676, 95 L.Ed.2d 127] ................ 7, 8

# TABLE OF AUTHORITIES
## (continued)

Page

STATUTES

Gov. Code, § 70372 ................................................................. 1

Gov. Code, § 70373 ................................................................. 1

Gov. Code, § 76104.6, subd. (a) ............................................. 1

Gov. Code, § 76104.7, subd. (a) ............................................. 1

Pen. Code, 215 ........................................................................ 6

Pen. Code, § 187, subd. (a) ..................................................... 1

Pen. Code, § 190.2, subd. (a) ...........................................passim

Pen. Code, § 190.2, subd. (c) ............................................. 7, 8

Pen. Code, § 190.2, subd. (d) ............................................7, 11

Pen. Code, § 215, subd. (a) ..................................................... 1

Pen. Code, § 654 ..........................................................1, 20, 21

Pen. Code, § 1202.4, subd. (b) ........................................1, 20

Pen. Code, § 1202.45 ..............................19, 20, 21, 22

Pen. Code, § 1202.45, subd. (a) ........................................... 20

Pen. Code, § 1465.7 ................................................................. 1

Pen. Code, § 1465.8, subd. (a) ............................................... 1

OTHER AUTHORITIES

CALJIC No. 1.00 ................................................................... 18

CALJIC No. 1.02 ................................................................... 18

CALJIC No. 8.80.1 ............................................................... 10

## TABLE OF AUTHORITIES
### (continued)

Page

CALJIC No. 8.81.17 ............................................................................ 17

## STATEMENT OF THE CASE

In an amended information filed by the District Attorney of Los Angeles County, appellant was charged with one count of murder (Pen. Code, § 187, subd. (a)[1]) and one count of carjacking (§ 215, subd. (a)). As to the murder count, it was alleged as a special circumstance that the murder was committed during the commission of the carjacking within the meaning of section 190.2, subdivision (a)(17)(L). (CT 59-61.)[2]

After the People elected not to seek the death penalty, appellant pleaded not guilty and denied the special circumstance allegation. (CT 71.) Trial was by jury. (CT 94.) The jury convicted appellant of first degree murder and carjacking, and found true the allegation. (CT 131-135.)

As to count 1, the trial court sentenced appellant to life in prison without the possibility of parole. As to count 2, the trial court sentenced appellant to the mid term of five years in prison, but stayed that sentence pursuant to section 654. The court imposed a restitution fine of $300 (§ 1202.4, subd. (b)), a court operations assessment of $80 (§ 1465.8, subd. (a)(1)), two DNA penalty assessments of $40 each (Gov. Code, §§ 76104.6, subd. (a), 76104.7, subd. (a)(1)), a state court construction penalty assessment of $40 (Gov. Code, § 70372), a conviction assessment of $80 (Gov. Code, § 70373), and a state penalty assessment of $16 (§ 1465.7). The court awarded appellant presentence custody credit of 940 days, consisting of 940 days of actual custody and zero days of conduct credit.

---

[1] All statutory references are to the Penal Code unless otherwise noted.
[2] Because there was only one volume of clerk's transcript and one volume of reporter's transcript, respondent will not refer to a volume number.

1

(CT 136-138; "Abstract of Judgment – Prison Commitment – Indeterminate"; "Felony Abstract of Judgment – Determinate"[3].)

Appellant filed a notice of appeal.  (CT 139.)

## STATEMENT OF FACTS

### A.   Prosecution Evidence

During the early morning hours of June 17, 2007, Anabel Correa, appellant's girlfriend, heard Enrique Reyes, otherwise known as "Gato," say to appellant, "Let's go steal a man's car."  (RT 59.)  Correa went with appellant and Reyes to the intersection of Vernon and Wall in Los Angeles, despite Correa's pleas for appellant not to go.  (RT 51, 63.)

At around 3:40 a.m., appellant and Reyes approached a Daewoo parked at the southeast corner of Vernon and Wall.  One of the two men walked around the car "looking in the vehicle" and then "loiter[ed]" around the area.  Several minutes later, both men were standing by the car.  (RT 35-37.)  The victim emerged from the car, and a "struggle" occurred between him and one of the two men.  (RT 38-40.)  The victim raised his hand and held his head before moving to the passenger door of the car.  The car then went in reverse and knocked the victim down.  (RT 40-41.)  The car moved "upwards" in a manner "consistent with it hitting an object causing it to rise."  The car moved forward, rising again "consistent with it hitting an object or an individual."  (RT 42.)[4]  Around this time, 15 to 20

---

[3] Concurrently with this brief, respondent has filed a Request for Judicial Notice with this Court, respectfully requesting judicial notice of the indeterminate and determinate abstracts of judgment prepared by the superior court clerk in appellant's case (BA376429).

[4] This summary comes from a surveillance video obtained by Los Angeles Police Department (LAPD) Detective Miguel Terrezas shortly after the incident.  (RT 32-33.)  The prosecutor played this video for the jury during his opening statement (RT 19-20), and Detective Terrezas later testified to the contents of the video (RT 34-43).

minutes after appellant, Reyes, and Correa arrived at the scene, Correa heard "screeching noises." (RT 51.)

Shortly after the incident, Detective Terrezas responded to the scene because he had received a radio call indicating that there had been a shooting and that the "victim was down." (RT 24-25.) When he arrived, he saw an ambulance leaving a strip mall located at the intersection. (RT 24.) He saw what looked to him like a "car club" that is used to prevent vehicle theft. He also observed car keys, a flat head screwdriver with a green handle, a car air freshener, and "some blood" on the pavement. (RT 24-25.) He learned that the victim had, in fact, not been shot, but that he had actually been "run over." (RT 25-26.) He learned the name of the victim, Rene Aguilar, and obtained a surveillance video from a nearby Laundromat showing two men taking a Daewoo sedan, but he was unable to identify any suspects. (RT 31-33.)

Later that morning, appellant admitted to Correa that he and Reyes were "trying to get the car from the man." (RT 51-52.) He also admitted that "they ran over a man." When she asked appellant what happened, he got "angry" with her and said, "You . . . bitch, I ran over the man." (RT 57-58.)

LAPD Detective Rogelio Sandoval assumed investigative responsibility in this case on June 19, 2007, two days after the incident. (RT 64.) In an effort to locate a suspect, Detective Sandoval interviewed people around the neighborhood, including Vera Gutierrez. Gutierrez told him that she was talking about the incident in the hallway of her apartment complex just south of the scene of the crime when Reyes passed by and made a "statement" about the incident. (RT 65.) Based on his conversation with Gutierrez, Detective Sandoval arrested Reyes 30 minutes later "just a few feet south of the crime scene." After speaking with Reyes, Detective Sandoval identified appellant as a suspect. (RT 66-67.)

On July 3, 2007, Detective Sandoval spoke with Correa. She spoke to the detective but was not fully honest with him about Aguilar's death and appellant's involvement because she was "scared" of appellant. (RT 52-53.) Detective Sandoval learned of appellant's possible location, but despite visiting the location "numerous times," he was not able to locate appellant. (RT 67-68.)

On September 27, 2010, Detective Terrezas spoke with Correa. (RT 43.) She identified appellant and Reyes as the two men responsible for Aguilar's death, and she told Detective Terrezas that appellant admitted to her, "I ran over the man." (RT 54-58.) Detective Terrezas ran appellant's criminal history and discovered that he was in Baltimore, Maryland. He contacted the United States Marshals and arranged for appellant to be arrested. Detective Terrezas traveled to Baltimore and spoke to appellant, and then brought him back to Los Angeles. (RT 44-45.)

The prosecutor and defense counsel agreed to two stipulations. The first was that Reyes spoke with the prosecutor on December 20, 2012. (RT 76.) An audio recording of the conversation was played for the jury. (RT 79.) During the conversation, Reyes remembered telling the prosecutor several years earlier that appellant was the driver and that he was the passenger. (Supp. CT 1.) However, he told the prosecutor that he would not say that again if he were put on the witness stand because he was afraid of retaliation in prison. He recalled telling the prosecutor that he and appellant agreed to take the car and that appellant was supposed to get in the driver's seat and drive away, but that the victim fought back. He told the prosecutor that if he were called to the stand, he would admit he made his past statements, but he did not want to say anything more. (Supp. CT 2.)

The second stipulation was that the coroner would have testified that he conducted an autopsy on the victim on June 22, 2007, and that he

determined the cause of death to be "multiple injuries caused by blunt force
trauma to the skull, rib fractures, other fractures and hip fractures." (RT
76-77.)

### B.    Defense Evidence

Appellant did not testify or present an affirmative defense. (RT 81.)

### ARGUMENT

### I.    SUBSTANTIAL EVIDENCE WAS PRESENTED IN SUPPORT OF THE JURY'S SPECIAL CIRCUMSTANCE FINDING

Appellant does not dispute the sufficiency of the evidence presented
in support of his convictions for first degree felony murder and carjacking.
Instead, he contends that insufficient evidence was presented in support of
the jury's special circumstance finding under section 190.2, subdivision
(a)(17)(L). (AOB 10-22.) Specifically, he contends that the evidence was
insufficient because it "does not support a true finding he acted with the
intent to kill Aguilar." (AOB 14.) Appellant's contention is without merit.

### A.    Applicable Law

It is well established that the inquiry a reviewing court must make in
determining whether sufficient evidence exists to support a conviction is
"whether, after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia*
(1978) 443 U.S. 307, 319 [99 S.Ct. 2781, 61 L.Ed.2d 560]; *People v.
Morris* (1988) 46 Cal.3d 1, 19, disapproved on another ground in *In re
Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5; *People v. Villalobos* (2006)
145 Cal.App.4th 310, 321-322.) If the evidence reasonably justifies the
factual findings and inferences necessarily drawn by the trier of fact, the
reviewing court may not reverse the judgment merely because it may also
be reconciled with different inferences and contrary findings. (*People v.

*Perez* (1992) 2 Cal.4th 1117, 1124.)  Rather, the reviewing court must
"resolve all conflicts in favor of the judgment and indulge all reasonable
inferences from the evidence in support of the judgment." (*People v.
Villalobos*, *supra*, 145 Cal.App.4th at p. 321; *People v. Duran* (2001) 88
Cal.App.4th 1371, 1375.)  It is the trier of fact, not the reviewing court, that
must be convinced of the defendant's guilt beyond a reasonable doubt.
(*People v. Perez*, *supra*, 2 Cal.4th at p. 1124.)  The same deferential
standard of review applies whether direct or circumstantial evidence is
involved.  (*People v. Thompson* (2010) 49 Cal.4th 79, 113; *People v. Perez*,
*supra*, 2 Cal.4th at p. 1124; *People v. Bean* (1988) 46 Cal.3d 919, 932.)

The same standard applies when a reviewing court determines
whether sufficient evidence was presented in support of a jury's special
circumstance finding.  (*People v. Zamundio* (2008) 43 Cal.4th 327, 357
["To assess the evidence's sufficiency, we review the whole record to
determine whether any rational trier of fact could have found the essential
elements of the crime *or special circumstances* beyond a reasonable
doubt"], emphasis added.)

To establish the truth of a special circumstance allegation under
section 190.2, subdivision (a)(17)(L), the jury has to find that a "murder
was committed while the defendant was engaged in, or was an accomplice
in, the commission of, attempted commission of, or the immediate flight
after committing, or attempting to commit . . . [¶] Carjacking, as defined in
Section 215."  (§ 190.2, subd. (a)(17)(L).)  "'A strict causal or temporal
relationship between the felony and the murder is not required; what is
required is proof beyond a reasonable doubt that the defendant intended to
commit the felony at the time he killed the victim and that the killing and
the felony were part of one continuous transaction.'"  (*People v. Edwards*
(2013) 57 Cal.4th 658, 719-720, quoting *People v. Coffman and Marlow*
(2004) 34 Cal.4th 1, 87.)

In the context of first degree felony murder, the California Supreme
Court has "not conditioned capital punishment upon an intent to kill for
actual killers." (*People v. Contreras* (2013) 58 Cal.4th 123, 163, citing
*People v. Belmontes* (1988) 45 Cal.3d 744, 794.)  In fact, the Supreme
Court has found that a felony-murder special-circumstance finding under
section 190.2, subdivision (a)(17), "is valid absent any requirement that a
defendant who actually killed during an enumerated felony acted with the
intent to kill."  (*Ibid.*; see also *People v. Anderson* (1987) 43 Cal.3d 1104,
1138-1148.)

With regard to accomplices to felony murder, the California Supreme
Court held in 1987 that "when the defendant is an aider and abettor [to
felony murder] rather than the actual killer, intent must be proved before
the trier of fact can find the special circumstance to be true." (*People v.
Anderson, supra*, 43 Cal.3d at pp. 1138-1139.)  That same year, the United
States Supreme Court held in *Tison v. Arizona* (1987) 481 U.S. 137 [107
S.Ct. 1676, 95 L.Ed.2d 127] that accomplice culpability for felony murder
can also be established by showing that the accomplice was a "major
participant in the felony committed," and that he acted with "reckless
indifference to human life."  (*Id.* at p. 158.)  After *Tison*, California's
Proposition 115 (1990) established section 190.2, subdivisions (c)[5] and (d)[6],

---

[5] Section 190.2, subdivision (c), states that "[e]very person, not the
actual killer, who, with the intent to kill, aids, abets, counsels, commands,
induces, solicits, requests, or assists any actor in the commission of murder
in the first degree shall be punished by death or [LWOP] if one or more of
the special circumstances enumerated in subdivision (a) has been found true
. . . ."

[6] Section 190.2, subdivision (d), states that "[n]otwithstanding
subdivision (c), every person, not the actual killer, who, with reckless
indifference to human life as a major participant, aids, abets, counsels,
commands, induces, solicits, requests, or assists in the commission of a
felony enumerated in paragraph (17) of subdivision (a) which results in the
(continued...)

which brought California's felony murder law "'into conformity'" with *Anderson* and *Tison*. (*People v. Proby* (1998) 60 Cal.App.4th 922, 927-928, quoting *People v. Bustos* (1994) 23 Cal.App.4th 1747, 1753.)

Now, under California law, during the commission of one of the enumerated felonies listed in section 190.2, subdivision (a)(17), "a person other than the actual killer is subject to the death penalty or life without parole if that person was a major participant in the underlying felony [here carjacking] and *either* intended to kill or acted with reckless indifference to human life." (*People v. Cleveland* (2004) 32 Cal.4th 704, 752; see also *People v. Nunez and Satele* (2013) 57 Cal.4th 1, 45; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 163, fn. 20; § 190.2, subds. (c) & (d).) A "major participant" in a crime is one who plays a "notable or conspicuous" part or is one of the "more important members" of the group that commits the crime. (See *People v. Proby*, *supra*, 60 Cal.App.4th at pp. 930-931, internal quotations omitted.) The term "reckless indifference to human life" means "a subjective appreciation or knowledge by the defendant of the grave risk of death." (*People v. Estrada* (1995) 11 Cal.4th 568, 578.)

## B.    Substantial Evidence Was Presented in Support of the Jury's Special Circumstance Finding

Here, while appellant contends that insufficient evidence was presented to demonstrate that he intended to kill Aguilar, no such showing was actually required. This is true whether appellant was the actual killer or an accomplice to Aguilar's murder.

---

(…continued)
death or some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or [LWOP] if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true . . . ."

First, substantial evidence was presented to allow a reasonable jury to find that appellant was the driver who ran over and killed Aguilar. Indeed, Reyes told the prosecutor that appellant was the driver. (Supp. CT 1.) Further, appellant's girlfriend told Detective Terrezas that when she asked appellant about the incident, he got angry with her and said, "You . . . bitch, I ran over the man." (RT 57-58.) Appellant contends that during his closing, the prosecutor "brushed . . . aside" the evidence that appellant was the driver. (AOB 21.) To the contrary, the prosecutor argued during closing that "all the evidence," including the "consistency of the [witness] statements" and the surveillance video, pointed to appellant as the driver (Supp. RT 38), and the weight of the evidence supports the prosecutor's argument. Thus, given substantial evidence that appellant was the driver and therefore the "actual killer," a reasonable jury's finding under section 190.2, subdivision (a)(17), is "valid absent any requirement that [appellant] acted with the intent to kill." (*People v. Contreras*, *supra*, 58 Cal.4th at p. 163.)

Second, even if the evidence were unclear as to whether appellant was the driver or the passenger, or if the evidence showed that appellant was the accomplice, a reasonable jury would not need to find that he possessed the intent to kill to find the special circumstance allegation true against him. A reasonable jury would need to find only that that appellant was a "major participant" in the killing and that he, at the very least, "acted with reckless indifference to human life." (*People v. Cleveland*, *supra*, 32 Cal.4th at p. 752.) Appellant and Reyes jointly decided to "steal a man's car," and the two men went together to the corner of Vernon and Wall, armed with a screwdriver. (RT 24-25, 59.) The two men attempted to get into the car despite the fact that Aguilar was in the car at the time, only to be confronted by Aguilar. A fight ensued, and appellant and Reyes got in the car. The men reversed the car over Aguilar's body, and then drove forward over

Aguilar's body a second time, causing him "multiple injuries . . . by blunt force trauma to the skull, rib fractures, other fractures and hip fractures" that ultimately killed him. (RT 35-42, 76-77.)

Whether or not he was the driver, appellant was one of only two men who perpetrated these crimes. He clearly played a "notable" and "conspicuous" part in the crimes and was thus a major participant. (See *People v. Proby*, *supra*, 60 Cal.App.4th at pp. 930-931.) Further, the evidence clearly demonstrates that even if he were just an aider and abettor, appellant acted with "reckless indifference to human life." Both times the men drove over Aguilar's body, the car moved "upwards" in manner consistent with running over something, such that it would have been impossible for the men not to know that they ran over Aguilar and impossible for them not to appreciate the grave risk of death their actions posed to Aguilar. (RT 42.) Indeed, appellant admitted to Correa that he and Reyes ran over the victim (RT 57-58), and given that the car ran over the victim not just once, but twice, there is no conceivable way that appellant lacked a "subjective appreciation or knowledge" of the "grave risk of death." (*People v. Estrada*, *supra*, 11 Cal.4th at p. 578.) Indeed, at the very least, this conduct demonstrates a "reckless indifference to human life." Thus, even if appellant were not the actual killer, there was still substantial evidence presented for a reasonable jury to find true the special circumstance allegation.

To the extent appellant frames his argument as one challenging the court's modified instruction in CALJIC No. 8.80.1, appellant forfeited any such claim on appeal by failing to object to the instruction during trial. (See *People v. Williams* (2010) 49 Cal.4th 405, 457.) The court's modified CALJIC No. 8.80.1 instructed the jury that if it found that appellant were not the actual killer, or if it were unsure whether he was the actual killer, it could only find true the special circumstance allegation if it found beyond a

reasonable doubt that appellant, "with the intent to kill," aided and abetted the felony murder.[7]  (See CT 120; Supp. RT 25-26.)  As appellant notes (see AOB 13-14), this modified instruction omitted the paragraph in the instruction designed to track section 190.2, subdivision (d), which instructs that the special circumstance can be found true against a person who is not the actual killer, if that person acts with "reckless indifference to human life as a major participant" in the enumerated felony (carjacking, in this case). (See § 190.2, subds. (a)(17) & (d).)

However, appellant never objected at trial to the instruction as read or requested any clarification or modification to the language.  Consequently, to the extent appellant frames his argument as alleging instructional error, such a claim has not been preserved for appeal and should be rejected by this Court.  (See *People v. Williams*, *supra*, 49 Cal.4th at p. 457; but see

---

[7] The jury was instructed as follows, in relevant part:

> If you find the defendant in this case guilty of murder of the first degree, you must then determine the following special circumstance: is true or not true: That the murder was committed while engaged in the commission of the crime of carjacking in violation of Penal Code section 190.2(a)(17)(L)[.]
> The People have the burden of proving the truth of a special circumstance.  If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true.
> If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance true unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree.

(CT 120; Supp. RT 25-26.)

*People v. Prieto* (2003) 30 Cal.4th 226, 247 [instructional error that affects defendant's substantial rights may be reviewed on appeal absent an objection].

Even if appellant's argument is considered on the merits, there is still no reason for this Court to reverse the jury's special circumstance finding. The standard under *Jackson v. Virginia* tasks the reviewing court with determining whether "*any* rational trier of fact" could have found the special circumstance allegation true based on the evidence presented at trial. (See *Jackson v. Virginia, supra*, 443 U.S. at p. 319, emphasis added.) As discussed above, whether or not appellant was the "actual killer," substantial evidence was presented at trial for a reasonable jury to find true the special circumstance allegation. Indeed, there was substantial evidence presented that appellant was the driver, meaning that a reasonable jury would not need to find that he possessed the intent to kill. (See *People v. Contreras, supra*, 58 Cal.4th at p. 163.) Even if it were unclear whether appellant was the driver, substantial evidence was presented for a reasonable jury to find that appellant was a "major participant" in the crimes and that he acted with "reckless indifference to human life." (See *People v. Cleveland, supra*, 32 Cal.4th at p. 752.)

Accordingly, because substantial evidence was presented at trial for a reasonable jury to find the special circumstance allegation true against appellant, whether or not appellant was the "actual killer," there is no reason for this Court to reverse the jury's finding.

## II. APPELLANT'S PROSECUTORIAL MISCONDUCT CLAIM HAS BEEN FORFEITED; APPELLANT CANNOT DEMONSTRATE DEFENSE COUNSEL RENDERED DEFICIENT PERFORMANCE FOR FAILING TO OBJECT TO THE PROSECUTOR'S CLOSING ARGUMENT, OR THAT HE WAS PREJUDICED BY DEFENSE COUNSEL'S FAILURE TO OBJECT

Appellant contends that defense counsel rendered ineffective assistance by failing to object to the prosecutor's alleged misstatement of law during his closing argument, thereby "creat[ing] a risk that the jury would deem the special circumstance to have been resolved by the murder verdict, such that it never deliberated separately on the factual issues raised when the defendant is not the actual killer and did not separately vote on the truth of the special circumstance allegation." (AOB 22-26.) To the extent appellant contends the prosecutor committed misconduct, this claim has been forfeited by defense counsel's failure to object. Further, counsel did not render deficient performance for failing to object to the prosecutor's closing argument. In any event, appellant was not prejudiced by counsel's failure to object. Thus, his claim of ineffective assistance likewise fails.

### A. Relevant Proceedings

During his closing argument, the prosecutor argued as follows:

Now in felony-murder, I already explained to you that if a death occurs in the course of a carjacking, it is felony-murder in the first degree. But you do not have to agree on what theory of murder. You just have to agree that it happened.

You can also believe that [appellant] is an aider and abettor to the murder that took place, but more importantly, he is an aider and abettor to the carjacking that took place.

You can also believe, as a theory of murder, that [Reyes] and [appellant] conspired together two individuals make an agreement they are going to steal the car, not kill the victim, but steal the car. And in the course of stealing the car, in a conspiracy theory, death occurs.

In the course of aiding and abetting a carjacking, a stealing of a car, a murder occurs. Any three ways you look at it, . . . in this case, it is clear from the evidence there is only one interpretation of the facts that have been presented, that [appellant] is guilty of first degree murder, and he did so in the course of a carjacking.

And, as a result, . . . if you believe those two things, you must find the special circumstance to be true. The special circumstance is that he did it in the commission of a carjacking.

(Supp. RT 38-39.)

## B.   Appellant's Prosecutorial Misconduct Claim Has Been Forfeited

First, appellant contends that when the prosecutor "misstate[d] the law" during closing argument, he committed misconduct. (AOB 23-24.) However, any such claim has been forfeited by defense counsel's failure to object. In order to preserve a clam of prosecutorial misconduct on appeal, a defendant must make a timely objection and request that the jury be admonished to disregard the conduct. (See *People v. Price* (1991) 1 Cal.4th 324, 447.) A failure to object is only excused when an admonishment would not cure the harm (see *People v. Booker* (2011) 51 Cal.4th 141, 184), or if "an objection would have been futile . . ." (*People v. Arias* (1996) 13 Cal.4th 92, 159). Here, appellant did not object to the prosecutor's closing argument that he now challenges on appeal. Nor does he claim that "it would have been futile for him to have done so" or that a "judicial admonition could not have cured any error." (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 561.) Thus, to the extent appellant raises a prosecutorial misconduct claim on appeal, any such claim has been forfeited.

### C.    Counsel Was Not Ineffective for Failing to Object to the Prosecutor's Statement During Closing

Second, defense counsel was not ineffective for failing to object to the prosecutor's statement of law during closing because the prosecutor's statement, viewed in context, was not misconduct.  However, even if it were, appellant cannot demonstrate that he suffered any prejudice under *Strickland v. Washington* (1984) 466 U.S. 668, 688 [104 S.Ct. 2052, 80 L.Ed.2d 674].

A defendant alleging ineffective assistance of counsel has the burden to show:  (1) that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice.  (*Strickland v. Washington, supra*, 466 U.S. at p. 688; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.)  In order to establish prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Strickland v. Washington, supra*, 466 U.S. at p. 694.)  A reasonable probability "is a probability sufficient to undermine confidence in the outcome."  (*Ibid.*)

In determining whether counsel's performance was deficient, a reviewing court exercises deferential scrutiny.  (See *Strickland v. Washington, supra*, 466 U.S. at p. 689.)  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  (*Ibid.*)  Reviewing courts generally will not second-guess defense counsel's strategic or tactical decisions.  (See *People v. Mitcham* (1992) 1 Cal.4th 1027, 1059.)  In order to fairly assess counsel's performance, a reviewing court must make every effort to eliminate the distorting effects of hindsight.  (See *People v. Bunyard* (1988) 45 Cal.3d 1189, 1215.)  In essence, the court must view the circumstances giving rise to the challenged conduct through the eyes of the attorney at the time of the

decision.  (See *People v. Stanley* (2006) 39 Cal.4th 913, 954.)  The California Supreme Court has explained that:

> [c]ompetent counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for the sake of the record.  Rather, competent counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances.

(*People v. Freeman* (1994) 8 Cal.4th 450, 509.)

Respondent notes first and foremost that a determination regarding the effectiveness of counsel's assistance in this case is better suited for habeas corpus proceedings.  Indeed, in circumstances like this, "where the appellate record does not reveal whether counsel had a legitimate reason for a litigation choice, [courts] generally reserve consideration of any ineffective assistance of counsel claim for possible proceedings on petition for writ of habeas corpus" rather than on direct appeal.  (*People v. Snow* (2003) 30 Cal.4th 43, 95, 111; see also *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Even so, defense counsel was not ineffective for failing to object to the prosecutor's alleged misconduct during closing argument because any objection would have been overruled.  When viewed in context, the prosecutor's closing argument did not constitute misconduct.  He argued to the jury that based on the evidence presented, appellant was "guilty of first degree [felony] murder," and he committed this crime "in the course of a carjacking."  Under the same reasoning, he argued, the special circumstance should be found true against appellant.  (Supp. RT 39.)  As discussed above, the prosecutor argued to the jury shortly before the challenged statement that the weight of the evidence demonstrated that appellant was the driver, and thus, the actual killer of Aguilar.  (RT 38.)  As further discussed above, the felony-murder special-circumstance can be found true "absent any

requirement that a defendant who actually killed during an enumerated felony acted with the intent to kill." (*People v. Contreras, supra*, 58 Cal.4th at p. 163.)  For the jury to find true the special circumstance allegation under the prosecutor's theory of the case, it needed only to find appellant killed Aguilar while appellant was engaged in the commission of the carjacking, regardless of appellant's intent to kill.  (See CALJIC No. 8.81.17; CT 21; Supp. RT 26.)  Thus, when viewed in context, based on the prosecutor's theory of the case, the challenged statement was not a misstatement of law, and it was not misconduct.  Accordingly, counsel was not deficient for failing to object to it.

Further, even if counsel's conduct were deficient, the prosecutor's comment did not result in any prejudice.  (See *People v. Farnam* (2002) 28 Cal.4th 107, 185-186 [ruling that choice of when to object is ordinarily not reviewable on appeal because competent counsel may choose to forgo objections, even valid objections, as counsel is in the best position to determine proper tactics in light of the jury's reaction]; *People v. Thomas* (1992) 2 Cal.4th 489, 531 [counsel cannot be ineffective for failing to make meritless motions]; see also *People v. Holt* (1997) 15 Cal.4th 619, 703 [courts need not determine whether counsel's performance was deficient before examining the prejudice that may have been suffered as a result of any deficient performance]; see *Strickland v. Washington, supra*, 466 U.S. at pp. 694, 697.)  "When, as here, the point focuses on the prosecutor's comments to the jury, the question is whether there is a reasonable possibility that the jury construed or applied any of the complained-of remarks in an objectionable manner." (*People v. Sanchez* (1995) 12 Cal.4th 1, 69, overruled on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421.)  "In conducting this inquiry, [the reviewing court] do[es] not lightly infer that the jury drew the most damaging rather than the least

damaging meaning from the prosecutor's statements." (*People v. Brown* (2003) 31 Cal.4th 518, 553-554, internal quotation marks omitted.)

Any misstatements of law made by the prosecutor during closing argument were vitiated by the court's instructions. (*People v. Sanchez*, *supra*, 6 Cal.4th at p. 70 [the reviewing court must "presume the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade"].) The court instructed the jury with CALJIC No. 1.00, which stated, in part, that "[y]ou must accept and follow the law as I state it to you, regardless of whether you agree with it. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions." (CT 100; Supp. RT 3.) The court also instructed the jury with CALJIC No. 1.02, which provided, in part, that "[s]tatements made by the attorneys during the trial are not evidence." (CT 101; Supp. RT 4.) Consequently, there is no reasonable possibility that the jury construed or applied the prosecutor's comments in an objectionable manner. (See *People v. Sanchez, supra*, 12 Cal.4th at p. 69.)

Further, as discussed at length above in Argument I, substantial evidence was presented at trial for a reasonable jury to find the special circumstance allegation true against appellant. The evidence demonstrates that appellant was almost certainly the driver, in which case the jury did not need to find that he had the intent to kill. Even if appellant were an aider and abettor, the evidence clearly demonstrates that appellant was a major participant in the offense and that, at the very least, he acted with reckless disregard for human life. Thus, if defense counsel had objected to the prosecutor's alleged misstatement of law during closing argument, there is still nothing in the record to suggest the jury would have decided any differently as to the special circumstance allegation, given the strength of

the evidence against appellant.  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 688.)  Accordingly, this claim fails.

### III.  EVEN IF ERRORS OCCURRED AT TRIAL, APPELLANT WAS NOT PREJUDICED BY THEIR CUMULATIVE EFFECT

Appellant contends that his conviction should be reversed due to the cumulative prejudicial effect of the alleged errors discussed in the foregoing arguments.  (AOB 26-27.)  However, as discussed above, any errors committed at trial were entirely harmless.  Accordingly, there could not have been any cumulative prejudicial effect.  (*People v. Contreras*, *supra*, 58 Cal.4th at p. 173 ["any errors we have found or assumed . . . were harmless under any applicable standard.  Any conceivable cumulative prejudicial effect does not establish that defendant was denied due process of law or a fair trial"]; *People v. Valdez* (2012) 55 Cal.4th 82, 181 ["To the extent there are a few instances in which we have found error or assumed its existence, no prejudice resulted.  The same conclusion is appropriate after considering their cumulative effect"]; accord, *People v. Jenkins* (2000) 22 Cal.4th 900, 1056 ["trial was not fundamentally unfair, even if we consider the cumulative impact of the few errors that occurred"]; *People v. Sapp* (2003) 31 Cal.4th 240, 287, 316; *People v. Jones* (2003) 29 Cal.4th 1229, 1268).

### IV.  ANY REFERENCE IN THE MINUTE ORDER AND INDETERMINATE ABSTRACT OF JUDGMENT TO A PAROLE REVOCATION FINE PURSUANT TO SECTION 1202.45 SHOULD BE STRICKEN

While the trial court did not impose a parole revocation fine pursuant to section 1202.45 during sentencing, the clerk's minute order and the abstract of judgment for appellant's indeterminate prison sentence nevertheless reflect the imposition of such a fine (see RT 110-114; CT 137; "Abstract of Judgment – Prison Commitment – Indeterminate").  Appellant contends that the trial court would have erred in imposing such a fine, given

appellant's sentence of life with the possibility of parole. Accordingly, he
contends this Court should strike the fine from the minute order (and
abstract of judgment) to reflect the trial court's oral pronouncement. (AOB
28-29.) Respondent agrees.

First, respondent notes that even though the minute order and
indeterminate abstract of judgment included a parole revocation fine under
section 1202.45, this does not control, given that the trial court did not
impose such a fine in its oral pronouncement. "Where there is a
discrepancy between the oral pronouncement of judgment and the minute
order or the abstract of judgment, the oral pronouncement controls."
(*People v. Zackery* (2007) 147 Cal.App.4th 380, 385; see also *People v.
Mitchell* (2001) 26 Cal.4th 181, 185-186.)

That said, appellant is correct that had the court imposed such a fine,
it would have been improper. Section 1202.45 provides: "In every case
where a person is convicted of a crime and whose sentence includes a
period of parole, the court shall at the time of imposing the restitution fine
[section 1202.4, subdivision (b)], assess an additional parole revocation fine
in the same amount . . . ." (§ 1202.45, subd. (a).) However, "[w]hen there
is no parole eligibility, the fine [under section 1202.45] is clearly not
applicable." (*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1183
[striking the imposition of parole revocation fine pursuant to section
1202.45 when the defendant was sentenced to life without the possibility of
parole].)

Here, the court sentenced appellant to life without parole, as well as to
a determinate term of five years that was stayed pursuant to section 654.
(See CT 136-138.) Because his determinate sentence was stayed, appellant
should not have been subject to a parole revocation fine under section
1202.45. In *People v. Brasure* (2008) 42 Cal.4th 1037, the California
Supreme Court held that a parole revocation fine under section 1202.45

applies where a defendant receives a death sentence as well as an *unstayed* determinate sentence. (*Id.* at p. 1075.) The Court distinguished *Oganesyan* by finding that in that case, the defendant was sentenced to life without parole as well as to an indeterminate life sentence. (*Ibid.*; see also *People v. Oganesyan, supra*, 70 Cal.App.4th at p. 1181.) In *People v. McWhorter* (2009) 47 Cal.4th 318, the Court struck a parole revocation fine imposed under section 1202.45 where the defendant was sentenced to death as well as to a determinate term for robbery that was stayed pursuant to section 654. (*Id.* at p. 380; see also *People v. Carr* (2010) 190 Cal.App.4th 475, 482, fn. 6 [striking a parole revocation fine under section 1202.45 where the defendant was sentenced to consecutive sentences of life without parole, as well as to a determinate sentence that was stayed pursuant to section 654].) Here, as in *McWhorter*, and unlike in *Brasure*, appellant's sentence does not include an *unstayed* determinate term. For this reason, he should not have been subject to a parole revocation fine under section 1202.45.

Thus, it appears a clerical error was made when drafting the minute order and indeterminate abstract of judgment in this case. Accordingly, respondent agrees that this Court should correct the minute order and abstract to reflect the court's oral pronouncement, and strike any references to the imposition of a parole revocation fine pursuant to section 1202.45. (See *People v. Mitchell, supra*, 26 Cal.4th at p. 185 ["Courts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts"].)

## CONCLUSION

Accordingly, respondent respectfully requests that any reference to a section 1202.45 parole revocation fine in the clerk's minute order and the indeterminate abstract of judgment be stricken, and that the judgment be affirmed in all other respects.

Dated:  April 2, 2014                Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
LANCE E. WINTERS
Senior Assistant Attorney General
JONATHAN J. KLINE
Deputy Attorney General

JONATHAN M. KRAUSS
Deputy Attorney General
Attorneys for Plaintiff and Respondent

JMK/cd
LA2013609212
61230215.doc

## CERTIFICATE OF COMPLIANCE

I certify that the attached **RESPONDENT'S BRIEF** uses a 13 point Times New Roman font and contains 6,550 words.

Dated: April 2, 2014

KAMALA D. HARRIS
Attorney General of California

JONATHAN M. KRAUSS
Deputy Attorney General
Attorneys for Plaintiff and Respondent

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *The People v. Miguel Angel Salazar*                    No.:   **B248963**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter.

On April 3, 2014, I electronically filed the attached **RESPONDENT'S BRIEF** with the Clerk of the Court using the Online Form provided by the California Court of Appeal, Second Appellate District.

I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On April 3, 2014, I served the attached **RESPONDENT'S BRIEF** by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 300 South Spring Street, Suite 1702, Los Angeles, CA 90013, addressed as follows:

**Jeralyn Keller**
**Attorney at Law**
**790 E. Colorado Blvd., Suite 900**
**Pasadena, CA 91101-2113**

**Kennes Ma, Deputy District Attorney**
**Los Angeles County**
**   District Attorney's Office**
**Clara Shortridge Foltz Criminal**
**      Justice Center**
**18000 Criminal Courts Building**
**210 West Temple Street**
**Los Angeles, CA 90012**

**The Honorable Bob S. Bowers, Jr., Judge**
**Los Angeles County Superior Court**
**Central District**
**Clara Shortridge Foltz Justice Center**
**210 West Temple Street**
**Department 105**
**Los Angeles, CA 90012**

**CAP-LA**
**California Appellate Project (LA)**
**520 S. Grand Ave., 4th Floor**
**Los Angeles, CA 90071-2600**

The one copy for the California Appellate Project was placed in the box for the daily messenger run system established between this Office and California Appellate Project (CAP) in Los Angeles for same day, personal delivery.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 3, 2014, at Los Angeles, California.

_____
            C. Damiani
            Declarant

_____
            Signature

LA2013609212
61239079.doc

# EXHIBIT COVER PAGE



D

EXIBIT

Description of this Exhibit:

1.) LETTER FROM APPELLATE ATTORNEY,
JERALYN KELLER, DATED JULY 7, 2021,
AND APPELLATE OPENING BRIEF, DATED
July 2, 2021,

Number of pages to this Exhibit: ___13___ pages.

## JERALYN KELLER
### ATTORNEY AT LAW
#### CERTIFIED SPECIALIST IN APPELLATE LAW
#### STATE BAR OF CALIFORNIA

#### 790 EAST COLORADO BOULEVARD, SUITE 900
#### PASADENA, CALIFORNIA 91101-2113
#### TELEPHONE (626) 683-1233

July 7, 2021

MIGUEL ANGEL SALAZAR AP5667
C5-212
P O BOX 731
IMPERIAL CA 92251

      Re:   People v. Miguel Salazar
            Court of Appeal Case No. 2d Crim No. B248963
            <u>Superior Court Case No. BA376429-01</u>

Dear Miguel:

      It was a pleasure speaking with you this morning. I am glad the move from one section to another will not interfere with working with the friend who is helping you to prepare legal filings.

      When we spoke a few weeks ago, I told you the rules do not permit appealing a denial of a petition for a writ of habeas corpus and to get a review of the claims you are making in your habeas petition you would have to refile your habeas petition.

      I also told you the superior court did not consider your Request for Resentencing under Penal Code section 1170.95 because it must be filed as a separate document and not as an attachment to your habeas petition. So, you should refile that document.

I also explained there are no issues that can be raised on the current appeal, and I would be filing a brief advising the court there were no issues. This DOES NOT MEAN you have lost the chance for resentencing. It only means the habeas petition is not the correct way to seek a resentencing. You must refile your request for resentencing. The court will then decide it.

I enclose a copy of the opening brief I filed with the court. I also enclose the complete record relating to your petition for habeas corpus that is the subject of this appeal.

If you think there is anything you want to the court of appeal to consider, you can file a supplemental brief. If you want to file such a brief, you must file it within the next 30 days.

If you have questions about this, please call me and we can talk about it.

Meanwhile, I am glad you are continuing to fight for resentencing.

Stay safe…..and…..stay out of trouble.

Best regards,

*Jeralyn Keller*

Jeralyn Keller

**2d Crim. No. B308624**

# COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

*Plaintiff and Respondent,*

v.

**MIGUEL ANGEL SALAZAR,**

*Defendant and Appellant.*

_____

Appeal from the Superior Court of Los Angeles County
The Honorable Charlaine F. Olmedo, Judge Presiding
Superior Court Case No. BA376429-01

## APPELLANT'S OPENING BRIEF
### *(People v. Serrano* (2012) 211 Cal.App.4th 496*)*

JERALYN KELLER SBN 72565
790 E. Colorado Blvd., Ste 900
Pasadena, CA  91101-2113
Tel: (626) 683-1233
Email: jkeller@jkellerlaw.com
Attorney for Appellant,
**MIGUEL ANGEL SALAZAR**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ 3

STATEMENT OF THE CASE ................................................................. 4

APPELLANT REQUESTS THIS COURT FOLLOW THE
PROCEDURES IN *PEOPLE V. SERRANO* (2012) 211 CAL.APP.4TH
496 ........................................................................................................................ 7

DECLARATION OF JERALYN KELLER IN SUPPORT OF
REQUEST THIS COURT FOLLOW THE PROECURES IN PEOPLE
V. SERRANO (2012) 211 CAL.APP.4TH 496 .......................................... 9

WORD COUNT……………………………………………………..11

PROOF OF SERVICE .............................................................................. 12

# TABLE OF AUTHORITIES

## CALIFORNIA CASES

*People v. Banks* (2015)
    61 Cal.4th 788.................................................................. 5

*People v. Chiu* (2014)
    59 Cal.4th 155.................................................................. 5

*People v. Clark* (2016)
    63 Cal.4th 522.................................................................. 5

*People v. Salazar* (Cal. Ct. App. Oct. 1, 2014)
    2014WL4923721, [non-publ. opn.].................................... 5

*People v. Serrano* (2012)
    211 Cal.App.4th 496........................................................ 6

## CALIFORNIA STATUTES

Penal Code
    § 187 & .......................................................................... 4
    § 190.2, subd.(a)(17)(L) ................................................... 4
    § 215, subd.(a).................................................................. 4
    § 1170.95 ......................................................................... 5

# COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

### THE PEOPLE OF THE STATE OF CALIFORNIA,

*Plaintiff and Respondent,*

v.

### MIGUEL ANGEL SALAZAR,

*Defendant and Appellant.*

---

## STATEMENT OF THE CASE

In 2013, Miguel Angel Salazar was convicted of carjacking Rene Aguilar's car (Pen. Code § 215, subd. (a)) and of the first-degree murder of Mr. Aguilar during that carjacking (Pen. Code § 187 & § 190.2, subd. (a)(17)(L)). (CT 29-38[1])

---

[1]   The record on appeal includes a reporter's transcript (RT) and a clerk's transcript (CT). Pages 5 through 22 of the clerk's transcript are separately bound and marked "Confidential: May Not Be Examined Without a Court Order." Salazar's opening brief makes no reference to the pages marked confidential.

Salazar was sentenced to serve a term of life without the possibility of parole. (CT 31-32, 39-40, RT 2-4)

This Court affirmed Salazar's conviction and sentence on direct appeal in October 2014 in *People v. Salazar* (Cal. Ct. App. Oct. 1, 2014) 2014WL4923721, [non-publ. opn.].

The current appeal relates to Salazar's Petition for a Writ of Habeas Corpus ("Habeas Writ") which sought a finding the evidence at trial was insufficient to support his first-degree murder conviction and insufficient to support the special circumstances finding. Salazar relied primarily on *People v. Banks* (2015) 61 Cal.4th 788, *People v. Clark* (2016) 63 Cal.4th 522, and *People v. Chiu* (2014) 59 Cal.4th 155). (CT 46-49, 52-55) Salazar also attached a Petition for Resentencing under Penal Code section 1170.95 to his Habeas Writ. (CT 86, 88-90)

The superior court denied Salazar's Habeas Writ as untimely and on the merits on September 21, 2020. The court did not address the Resentencing Petition attached to the Habeas Writ.[2] (CT 101-102)

---

[2]   Salazar has refiled his Petition for Resentencing under Penal Code section 1170.95. His Petition is currently pending before the superior court. (See, concurrently filed Request for Judicial Notice.)

5

Salazar filed a Notice of Appeal seeking review of "the decision … entered on September 21, 2020" and the Petition for Resentencing attached to the Habeas Writ. (CT 112-113)

## APPELLANT REQUESTS THIS COURT FOLLOW THE PRO-CEDURES IN *PEOPLE v. SERRANO* (2012) 211 CAL.APP.4TH 496

Salazar is appealing the superior court's denial of his post-judgement Habeas Writ and the court's failure to rule on his Resentencing Petition attached to the Habeas Petition.

Salazar requests this Court follow the procedures in *People v. Serrano* (2012) 211 Cal.App.4th 496.

Appointed counsel has written to Salazar at the following address: Miguel Angel Salazar AP5667, P O Box 731, Imperial, CA. 92251. Counsel has also had a confidential telephone call with Salazar regarding this matter.

Counsel's letter included the transcript on appeal and a copy of this brief. Counsel's letter and counsel's confidential telephone call informed Salazar this brief is being filed, counsel was unable to find an appealable issue, and advised him he can file a supplemental brief with this Court.

Counsel's letter and counsel's confidential telephone call also advised Salazar he could request the Court appoint different counsel to represent him if he so desires.

Counsel remains available to brief any issues upon request by the Court.

Dated:    July 2, 2021                    Respectfully submitted,


                                         Jeralyn Keller
                                         Attorney for appellant
                                         Miguel Angel Salazar

## DECLARATION OF JERALYN KELLER IN SUPPORT OF REQUEST THIS COURT FOLLOW THE PROECURES IN PEOPLE v. SERRANO (2012) 211 CAL.APP.4TH 496

I, Jeralyn Keller, declare under penalty of perjury:

I am the attorney appointed to represent appellant, Miguel Angel Salazar, on appeal from the denial of his Petition for a Writ of Habeas Corpus and the attached Petition for Resentencing under Penal Code section 1170.95.

I know the facts stated in this declaration of my own personal knowledge and could competently testify to these facts if called upon to do so.

I have reviewed the entire record on appeal. I have found no arguable issues to raise on appeal.

I had a confidential telephone call with Mr. Salazar during which we discussed my evaluation of the record, my inability to find an arguable issue on appeal, my intention to file this pleading, and options available to Mr. Salazar including his opportunity to file a supplemental opening brief and his right to request appointment of a different attorney.

I sent the entire record on appeal and a copy of this brief to Mr. Salazar and again informed him he may file a supplemental brief and he may request the Court relieve me as counsel.

I do not move to withdraw as counsel of record for Mr. Salazar, and I remain available to brief any issues the Court requests.

Executed on July 2, 2021, at Los Angeles, California.


_____
Jeralyn Keller, Declarant

# WORD COUNT

I, Jeralyn Keller, certify I was appointed to act as appellate counsel for Miguel Angel Salazar by the Court of Appeal, Second Appellate District, Division Four, and I continue to act as Mr. Salazar's appellate counsel.

I prepared the Appellant's Opening Brief on my word processor utilizing Microsoft Word. The program indicates Appellant's Opening Brief, excluding this certificate, the Proof of Service, the Table of Contents, and the Table of Authorities contains 910 words.


Jeralyn Keller

## PROOF OF SERVICE

I, JERALYN KELLER, declare:

I am over eighteen (18) years of age and not a party to the within action. My business address is 790 East Colorado Boulevard, Suite 900, Pasadena, California 91101-2113. On July 2, 2021, I served the within

### APPELLANT'S OPENING BRIEF—SERRANO

on each of the following by TrueFiling, by email, or by placing a true copy thereof in a sealed envelope with postage fully prepaid in the United States mail at Pasadena, California:

ROB BONTA                    GEORGE GASCÓN
TRUEFILING                   TRUEFILING

CALIFORNIA APP. PROJ.        JUDGE C. OLMEDO
EMAIL                        DEPT 105
                             210 W. TEMPLE ST
MIGUEL ANGEL SALAZAR         LOS ANGELES, CA 90045
AP5667
P O BOX 731
IMPERIAL CA 92251

I declare under penalty of perjury the foregoing is true and correct and I signed the declaration on July 2, 2021 at Los Angeles, California.

_____

Jeralyn Keller

# EXHIBIT COVER PAGE



EXHIBIT

Description of this Exhibit:

1.) SUPERIOR COURT ORDER, DATED 9/21/2020

Number of pages to this Exhibit: ___5___ pages.

**FILED**
Superior Court of California
County of Los Angeles

SEP 21 2020

Sherri B. Carter, Executive Officer/Clerk

By_____ Deputy
Robert Saiki

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| In re, | ) Case No.: BA376429 |
| | ) |
| MIGUEL SALAZAR, | ) ORDER RE: PETITION FOR WRIT OF |
| | ) HABEAS CORPUS |
| Petitioner, | ) |
| | ) |
| | ) |
| On Habeas Corpus | ) |
| | ) |

Petitioner's Claim, Procedural History and Factual Summary

A.  *Procedural History*

The Court has read and considered the Petitioner's writ of habeas corpus that was filed on June 22, 2020, and received by this court on July 8, 2020.  In addition, the Court has read and considered the records and files in the above-captioned matter.  Petitioner requests that this court reverse the judgment for his special circumstance murder and carjacking convictions based upon the claim that there was insufficient evidence that petitioner was a major participant or acted with reckless indifference to human life.  In support of his position, Petitioner relies on several cases including *People v. Banks*, (2015) 61 Cal.4th 788, and *People v. Chiu*, (2014) 59 Cal.4th 155.

In 2011, Petitioner was charged in an information with one count of murder with special circumstance and one count of carjacking.  On April 6, 2013, a jury trial in the above-captioned

-1-

--98--

1   case commenced. On April 19, 2013, petitioner was convicted of murder in violation of Penal

2   Code Section 187and carjacking in violation of Penal Code Section 215. In addition, the jury

3   found true the special circumstance in violation of Penal Code Section 190.2(a)(17). On May 16,

4   2013, petitioner was sentenced to life in prison without the possibility of parole for the special

5   circumstance murder, and a term of five years for the carjacking, stayed under Penal Code

6   Section 654.

7       B. *Factual Summary (*taken from the Oct. 2014 remittitur)*

8       Around 3:49 a.m. on June 17, 2007, in the parking lot of a strip mall at the corner of

9   Vernon and Wall in Los Angeles, defendant and an accomplice, Enrique Reyes, carjacked Renee

10  Aguilar of his Daewoo automobile. Aguilar was killed when, after the carjackers entered the

11  vehicle, the car knocked him down and drove over him, inflicting fatal blunt force trauma

12  injuries. Not until 2010 was petitioner identified as the suspect. He was located in Baltimore,

13  Maryland, and transported back to Los Angeles to be charged.

14      A surveillance video from a laundromat at the strip mall where the killing occurred

15  captured the crime. The video, which was not of sufficient quality to identify the participants,

16  was played for the jury, and the still photographs taken from the video were introduced into

17  evidence. As narrated by Los Angeles Police Detective Miguel Terrezas, the video showed two

18  unidentified men approach Aguilar's vehicle and loiter nearby. A few seconds later, a person

19  (later identified as Aguilar) exited the vehicle and appeared to struggle with one of the men.

20  Aguilar moved to the side of the front passenger door of the vehicle, raising his hand and holding

21  his head. As the car started into reverse and turned, the front end appeared to strike Aguilar and

22  knock him down. The vehicle then appeared to rise as if running over something, after which it

23  moved forward, again rising as if running over something, though from the video one could not

24  see precisely what it ran over. The vehicle then drove off.

25      Detective Terrezas responded to the scene of the homicide in response to a radio call that

26  there had been a shooting. Once at the location, he learned that the victim had been run over. On

27  the ground he found a "car club" used to prevent vehicle theft, car keys, a flat head screwdriver,

28  and blood.

Anabel Correa, defendant's then-girlfriend, was with defendant and Reyes before the crime. Reyes suggested to defendant that they steal someone's car. Correa urged defendant not to go but accompanied him when he went with Reyes to Vernon and Wall. She saw them go to the parking lot of the strip mall, and perhaps 15 to 20 minutes later hard screeching noises. Later that morning, Correa asked petitioner what had happened. He told her that he and Reyes "were there trying to get the car from the man." She then testified that petitioner became angry and told her "they ran over a man. That's all I can remember." Shown a report of a prior statement she made to the police, she "refresh[ed her recollection] as to what [petitioner]said . . . when [she was] asking him questions about" the incident. After refreshing her recollection, she testified that petitioner said, "You . . . bitch, I ran over the man."

The parties stipulated that if called as a witness, Reyes (who was refusing to leave his cell to come to court) would testify that an audio recording played for the jury with the assistance of a transcript was a true and accurate depiction of an interview with the prosecutor on December 20, 2012. In that interview, Reyes remembered that three years earlier, he had told the prosecutor that "[petitioner] was the driver and the I was the passenger." He remembered having said that they "agreed to get in the car . . . and [petitioner] was just supposed to jump into the driver's seat and take off . . . [b]ut homeboy started to fight back." Reyes told the prosecutor that if called as a witness, he would admit that he made these statements, but did not want to say anything more, because he did not "want to incriminate [himself] up [s]tate" where he was housed in prison.

C. *Appellate Court Findings*

The Appellate Court ruled that there was sufficient evidence to affirm petitioner's convictions. As the Appellate Court noted in the remittitur, "[h]ere consistent with the evidence provided by Reyes and Correa, the prosecutor's primary theory was that [petitioner] was the actual killer – the driver of the carjacked vehicle. Under that theory, the prosecution was not required to prove that the [petitioner] acted with an intent to kill (or reckless disregard for life) in order to sustain the special circumstance." The Appellate Court further held that "[s]ubstantial evidence clearly supported the conclusion that [petitioner] was the driver."

Finally, the Appellate Court also determined that there was also sufficient evidence to find that petitioner was both a major participant and acted with reckless indifference to human life. The Appellate Court specifically held that, in the alternative,"[d]river or not, the [petitioner] was necessarily a major participant in the carjacking and acted with reckless indifference to human life." In so finding, the Appellate Court noted that petitioner and Reyes "conspired to commit the crime beforehand, carried it out together, and fled in the carjacked vehicle together. Thus, there is no doubt that [petitioner] was a major participant in the crime." Furthermore, the Appellate Court also held that "[a]ssuming for the sake of argument that [petitioner] was the passenger when Aguilar was struck and run over, [petitioner's] participation in the carjacking also demonstrated reckless indifference to human life. . . . This evidence leaves no room for argument that [petitioner] (as the purported passenger) was unaware that his participation in the carjacking created a grave risk to Aguilar's life."

D. *Findings and Order*

Petitioner's claims are both untimely and without merit. First, petitioner has failed to explain and justify the significant delay in seeking habeas relief. *In re Clark,* (1993) 5 Cal.4th 750, 765; *In re Swain,* (1949) 34 Cal.2nd 300, 303-304. The change in the law that Petitioner cites to actually took effect in 2014 with the decision in the *Chiu* case and 2015 with the decision in the *Banks* case. Approximately five to six years have lapsed between the time of the change in the law and of the filing of the instant petition. While a change in the law may result in a new ground to file a petition for a writ of habeas corpus, it does not allow for a petitioner to file that petition years later and whenever he feels it appropriate. Petitioner still has a duty to file a timely petition. Had Petitioner wished to assert *Banks* or *Chiu* error in a timely fashion, he should have done so by raising such a claim at or near the time of those particular decisions. Petitioner offers no explanation or reason for his delay in bringing forth this claim at this late date. Thus, this petition is now untimely.

Second, *assuming arguendo* that the petition is timely, it is denied on the merits. The facts of the instant case are distinguishable and far more egregious than the facts set forth in either *Chiu* or *Banks.* While both of those cases acknowledge that there is a different level of

-4-

culpability for someone who is found guilty of murder under the natural and probable consequences doctrine as an aider and abettor, petitioner here was directly involved in the in the commission of all of the crimes for which he was convicted and in fact was the principal actor. As set forth in the remittitur, there was sufficient evidence to support petitioner's convictions as the actual driver who drove over the victim numerous times thereby causing his death. However, the Appellate Court went further in their analysis and opined that *assuming arguendo* that petitioner was the passenger, the facts of the instant case also support a finding that petitioner was a major participant and acted with reckless indifference to human life. Petitioner was directly involved in the murder and carjacking. Unlike a get-away driver, look-out, or facilitator, petitioner here, along with his co-defendant, committed and actively planned and participated in the carjacking and murder.

The facts of this case as found by the jury clearly show that petitioner was equally culpable, if not more culpable than his co-defendant. Under these facts, it is clear that petitioner was the direct principal and not simply an aider and abettor. It is also clear that this was proven beyond a reasonable doubt. Under no theory of liability or stretch of the facts of the instant case is petitioner simply an aider and abettor. Rather, petitioner is the main principal to whom co-defendant Reyes aided and abetted. Petitioner had the motive and planned the crime with another co-conspirator and he was present at, directed and participated in every phase of these crimes. Based upon the facts presented to the jury and proven beyond a reasonable doubt, petitioner was the principal and thus *Chiu* and *Banks* are inapplicable here.

Accordingly, the petition is DENIED as untimely and without merit.

September 21, 2020

CHARLAINE F. OLMEDO
CHARLAINE F. OLMEDO
Judge of the Superior Court

The clerk is to give notice.

-5-

# EXHIBIT COVER PAGE

F

EXIBIT

Description of this Exhibit:

1.) Court of Appeal OPINION, DATED NOVEMBER 16, 2021.

Number of pages to this Exhibit: ___4___ pages.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

COURT OF APPEAL – SECOND DIST.

**FILED**

Nov 16, 2021

DANIEL P. POTTER, Clerk

Will Lopez          **Deputy Clerk**

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MIGUEL ANGEL SALAZAR,<br><br>        Defendant and Appellant. | B308624<br>(Los Angeles County<br>    Super. Ct. No. BA376429) |

APPEAL from an order of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Dismissed.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## INTRODUCTION

Miguel Angel Salazar appeals from an order denying his petition for writ of habeas corpus (habeas petition) in which he argued the evidence was insufficient to support his conviction or the jury's special circumstances finding.  His appellate counsel filed a brief raising no claim of error and asking this court to proceed under *People v. Serrano* (2012) 211 Cal.App.4th 496 (*Serrano*).  Because the order denying appellant's habeas petition is nonappealable, we must dismiss the appeal.

## BACKGROUND AND DISCISSION

In 2013, a jury convicted appellant of first degree murder (Pen. Code,[1] § 187, subd. (a)) and carjacking (§ 215, subd. (a)), and found true a special circumstance allegation that the murder was committed during the commission of a carjacking (§ 190.2, subd. (a)(17)(L)).  Appellant was sentenced to a prison term of life without possibility of parole.  We subsequently affirmed appellant's conviction and sentence.  (*People v. Salazar* (Oct. 1, 2014, B248963) [non-pub. opn.].)

On June 22, 2020, appellant filed a habeas petition, arguing that the evidence at trial was insufficient to support either his conviction for first-degree murder or the jury's special circumstances finding.  Also attached, as an exhibit to appellant's habeas petition, was a petition for resentencing under section 1170.95 (resentencing petition).

On September 21, 2020, the trial court denied the habeas petition as untimely and on the merits.  The court did not address the resentencing petition.

---

[1]     Statutory references are to the Penal Code.

This appeal is from the trial court's denial of the habeas writ.[2]

We appointed counsel for appellant. Appointed counsel filed a brief raising no issues and invoking *Serrano, supra*, 211 Cal.App.4th 496, and filed a declaration stating she had "reviewed the entire record on appeal, [and] found no arguable" issues. Counsel stated she had explained her evaluation to appellant and informed him of his right to file a supplemental brief. On July 7, 2021, appellant was notified that he had 30 days to file a supplemental brief. To date, we have not received a supplement brief.

The denial of a petition for writ of habeas corpus is not appealable. In "noncapital cases, if the superior court denies a petition for a writ of habeas corpus, the petitioner has no statutory right to appeal. Instead, the petitioner must file a new, original petition, generally in the Court of Appeal." (*Robinson v. Lewis* (2020) 9 Cal.5th 883, 895; *Briggs v. Brown* (2017) 3 Cal.5th 808, 836 [same].)[3]

---

[2]     The notice of appeal states that appellant seeks review of the resentencing petition ["Petition (PC 1170.95) denied"], in addition to denial of his habeas writ. However, appellant subsequently refiled his resentencing petition, which remains pending before the trial court.

[3]     This appeal would be dismissed even if construed as an appeal from the denial of a post-judgment order other than the order denying the habeas petition. When appointed counsel raises no issues in an appeal from an order denying post-judgment relief, this court need not independently review the record. (*Serrano, supra*, 211 Cal.App.4th at p. 498; accord, *People v. Scott* (2020) 58 Cal.App.5th 1127, 1130–1131 (*Scott*), rev. granted Mar. 17, 2021, S266853.) Rather, when a defendant appeals from a post-judgment order but raises no issues, we will dismiss the appeal as abandoned. (*Scott*, at p. 1130.)

3

## DISPOSITION

The appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.

4

# EXHIBIT COVER PAGE



EXIBIT

Description of this Exhibit:

1.) COURT OF APPEAL ORDER, DATED 07/19/2022

Number of pages to this Exhibit: __2__ pages.

Miguel Angel Salazar
CDC #: AP5667
Centinela State Prison
P.O. Box 731
Imperial, CA 92251-0731

Case Number B320617
Division   4

In re MIGUEL ANGEL SALAZAR on Habeas Corpus.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

**COURT OF APPEAL – SECOND DIST.**

# FILED

## Jul 19, 2022

DANIEL P. POTTER, Clerk

Will Lopez          Deputy Clerk

| | |
|---|---|
| In re MIGUEL ANGEL SALAZAR, | B320617 |
| On Habeas Corpus. | (Los Angeles County Super. Ct. No. BA376429) (Charlaine F. Olmedo, J.) |
| | ORDER |

THE COURT:

The petition for writ of habeas corpus filed May 27, 2022, has been read and considered and is denied. As to petitioner's ineffective assistance of counsel claim, the petition raises an issue that could have been raised in his appeal in Case No. B248963, but was not, and petitioner has failed to allege facts establishing an exception to the rule barring habeas consideration of claims that could have been raised on appeal. (*In re Reno* (2012) 55 Cal.4th 428, 490-493.) In addition, petitioner fails to demonstrate that there is a reasonable probability that a more favorable outcome would have resulted if his trial counsel had raised an accidental death defense. (*In re Cox* (2003) 30 Cal.4th 974, 1016.) As to petitioner's claim that his first-degree murder conviction should be reversed because he was "an aider and abettor" under *People v. Chiu* (2014) 59 Cal.4th 155, our appellate opinion in Case No. B248963 clearly negates this claim by determining that the jury could have either found that petitioner was either (1) the actual killer or (2) a major participant in the crime and acted with reckless indifference to human life.

| | | |
|---|---|---|
| *MANELLA, P.J. | WILLHITE, J. | COLLINS, J. |

# EXHIBIT B

SUPREME COURT
# FILED

DEC 2 1 2022

Jorge Navarrete Clerk

_____
Deputy

S276033

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

In re MIGUEL ANGEL SALAZAR on Habeas Corpus.

---

The petition for writ of habeas corpus is denied.

CANTIL-SAKAUYE
_____
*Chief Justice*

US POSTAGE ~PITNEY BOWES

ZIP 92251 $ 010.10
02 4W
0000339865 JAN 17 2023

GENERATED FROM
CENTINELA STATE PRISON

Miguel Angel Salazar #AP5667
Centinela State Prison
Po. Box 921 /C2-105
Imperial, CA. 92251

Clerk of The court
United States District Court
Central District of California
255 E. Temple Street, Rm # 180
Los Angeles, CA. 90012

RECEIVED
CLERK, U.S. DISTRICT COURT

JAN 19 2023

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY